## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHARLES C. APPLEBY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0193 (RBW)** |
| | ) | |
| **THE HONORABLE** | ) | |
| **FRANCIS J. HARVEY,** | ) | |
| **Secretary of the Army** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS, IN PART,
## AND FOR SUMMARY JUDGMENT

Defendant hereby moves to dismiss Plaintiff's Complaint, in part, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

be granted. Defendant moves for summary judgment on Plaintiff's remaining claims pursuant to

Rule 56 of the Federal Rules of Civil Procedure, because there is no genuine issue as to any

material fact and Defendant is entitled to judgment as a matter of law. In support of this motion,

Defendant respectfully submits the attached memorandum of points and authorities, statement of

material facts not in genuine dispute, administrative record, and a proposed order.


Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____/s/_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C. 20530
(202) 353-9895

Of Counsel:

Major Louis Birdsong
U.S. Army Litigation Division
901 N. Stuart Street
Arlington, Virginia 22203-1837

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHARLES C. APPLEBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0193 |
| | | (RBW) |
| | ) | |
| THE HONORABLE | ) | |
| FRANCIS J. HARVEY, | ) | |
| Secretary of the Army | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS, IN PART, AND FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendant files this Memorandum in support of Defendant's Motion to Dismiss, in part, and for Summary Judgment. Plaintiff requests this Court to expunge all military records referencing a Department of the Army investigation and a Report of Investigation (ROI), and remove all documents pertaining to Plaintiff's removal from the Brigadier General Promotion List (Compl. at 34 ¶¶ 1-3), restore plaintiff to the Brigadier General Promotion List (Compl. at 34, ¶ 3), to grant Plaintiff attorney fees (Compl. at 34, ¶ 5), and to award litigation "costs" to Plaintiff (Compl. at 34 ¶ 4).

Plaintiff's Complaint should be dismissed, in part, pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff is a member of the National Guard of the United States as well as the National Guard of Florida and the Military Whistle Blower Protection Act clearly applies to Plaintiff. Additionally, Plaintiff's claim that the alleged failure of the complaining witness to exhaust other administrative remedies

deprives the Army Inspector General of authority to investigate allegations of wrong doing by a senior Army leader are clearly inconsistent with the governing Army regulations. Finally, Defendant is entitled to judgment as a matter of law on Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact. Defendant's statement of material facts not in genuine dispute and the Administrative Record ("AR") support this memorandum.

## II. STATEMENT OF FACTS

We respectfully refer the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

Under Rule 12(b)(6), a motion to dismiss should be granted only if the "Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing* Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court must resolve all factual doubts in favor of the Plaintiff and allow the Plaintiff the benefit of all inferences. *See* EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In reviewing a motion to dismiss, the Complaint's factual allegations must be presumed true and all reasonable inferences drawn in Plaintiff's favor. Kowal, 16 F.3d at 1276. While Plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the Court need not accept inferences drawn by Plaintiff if such

inferences are unsupported by the facts set out in the complaint.  Kowal, 16 F.3d at 1276.

Further, while the Court must accept Plaintiff's allegations of fact as true, the Court is not

required to accept as correct the conclusions Plaintiff would draw from such facts.  Taylor v.

Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury

Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  Nor must a court

"accept legal conclusions cast in the form of factual allegations."  Kowal, 16 F.3d at 1276; *see*

*also* Papasan v. Allain, 478 U.S. 265, 286 (1986).

Where matters outside the pleadings are presented to the Court in support of a motion to

dismiss under Fed. R. Civ. P. 12(b)(6) the motion shall be treated as a motion for summary

judgment and disposed of under Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12; *but see* Vanover v.

Hantman, 77 F. Supp.2d 91, 97 (D.D.C. 1999)(While documents outside the pleading are

normally not considered, "where a document is referred to in the complaint and is central to

plaintiff's claim, such a document attached to the motion papers may be considered without

converting the motion to one for summary judgment.").

### B.  Summary Judgment

In 1986, the Supreme Court issued three opinions that clarified the standards governing

consideration of motions for summary judgment under Fed. R. Civ. P. 56.  Matsushita Electric

Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

3

Civ. P. 56(c); <u>Celotex</u> at 322; <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995);

<u>Molerio v. FBI</u>, 749 F.2d 815, 823 (D.C. Cir. 1984). Where no genuine dispute exists as to any

material fact, summary judgment is required. <u>Anderson</u>, 477 U.S. 242 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation.

*Id.* at 247. The party moving for summary judgment need not prove the absence of an essential

element of the nonmoving party's case. <u>Celotex</u>, at 325. "The burden on the moving party may

be discharged by 'showing' – that is, pointing out to the district court – that there is an absence

of evidence to support the non-moving party's case." *Id.* Once the moving party has met its

burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing

that a genuine issue exists for trial. <u>Matsushita</u>, 475 U.S. at 586. Fed. R. Civ. P. 56 requires the

party opposing summary judgment go beyond the pleadings, and by affidavits, depositions,

answers to interrogatories or admissions, set forth "specific facts showing that there is a genuine

issue for trial." Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Banks v. C & P Tel. Co.</u>, 802

F.2d 1416 (D.C. Cir. 1986). To avoid summary judgment, the Plaintiff must state specific facts

or present some objective evidence that would enable the court to find an entitlement to relief.

In an opinion issued the same day as <u>Celotex</u>, the Supreme Court explained the

circumstances where summary judgment is appropriate: "if the evidence is merely colorable . . .

or is not sufficiently probative . . . summary judgment may be granted. . . . (T)he mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.

Unsupported speculation is not enough to defeat a summary judgment motion; the existence of

specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e) (the nonmoving party

may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial."). *See also* <u>Hayes v. Shalala</u>, 902 F.Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported allegations or denials); <u>Johnson v. Digital Equip. Corp.</u>, 836 F.Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment); <u>Batson v. Powell</u>, 912 F.Supp. 565, 578 (D.D.C. 1996), aff'd 203 F.3d 51(D.C. Cir. 1999).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *See* <u>Anderson</u>, 477 U.S. at 247-248. Perhaps most significantly, the court authorized weighing the evidence at the summary judgment stage of litigation, stating that the "purpose of summary judgment is to 'pierce the pleadings, and to assess the proof in order to see whether there is a need for a trial.'" *Id.* (citation omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249-250 (citations omitted). If the evidence is "merely colorable, or is not significantly probative," or the record taken as a whole could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Id.*; <u>Matsushita</u>, 475 U.S. at 587.

Thus, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," (<u>Matsushita</u> at 586), or with "conclusory allegations . . . unsubstantiated assertions, . . . or a scintilla of evidence." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). Importantly for this case, "[b]y pointing out the absence of evidence to support the nonmoving party's case, the moving party can demonstrate that there is no genuine issue as to any material fact, therefore entitling it to summary judgment."

Shelborne v. Runyon, 1997 WL 527352 at **3, *citing* Celotex, 477 U.S. at 325.

In Celotex, the Supreme Court further instructed that the "(s)ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1).  A court should grant summary judgment if the moving party submits affirmative evidence that negates an essential element of the nonmoving party's claims or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.  Celotex, 477 U.S. at 331.

## IV.  ARGUMENT

### A.  Count I Fails to State a Claim for Which Relief Can Be Granted Because it Is Based upon an Erroneous Reading of the Military Whistle Blower Protection Act, 10 U.S.C. § 1034.

Count I of Plaintiff's complaint alleges that the Military Whistle Blower Protection Act does not apply to the National Guard unless in "federal duty or training status." Compl. ¶ 118.  However, Plaintiff, and all members of a state National Guard, are also members of the National Guard of the United States, a reserve component of the United States Armed forces to which the Military Whistle Blower Protection Act does apply.

The "National Guard" came into being as an official institution in the early 1900's, with the passage of the Dick Act.  Act of Jan. 21, 1903, ch. 196, 32 Stat. 775.  The Dick Act was part of a series of three laws passed between 1901 and 1903[1] for the purpose of "transforming a

---

[1]  These three laws included:  (1) Act of Feb. 2, 1901, ch. 192, 31 Stat. 748 ("the Army Reorganization Act"); (2) Act of Jan. 21, 1903, ch. 196, 32 Stat. 775 ("the Dick Act"); and (3) Act of Feb. 14, 1903, ch. 553, 32 Stat. 830 (which established the General staff).

frontier police force into a respected and modern fighting machine." Frederick Bernays Weiner, The Militia Clause of the Constitution, 54 Harv. L. Rev. 181, 193 (1940) [hereinafter Weiner, The Militia Clause]. The passage of the Dick Act was the first real exercise of Congressional power to organize the militia and a watershed event in the creation of the modern day National Guard.[2]

The Dick Act provided the Federal government with trained reserve units to call forth to "execute the Laws of the Union, suppress Insurrections and repel Invasions." U.S. Const. Art. I, § 8, cl. 14; Act of Jan. 21, 1903, ch. 196, § 4, 32 Stat. 775. See also Perpich v. Dep't of Defense, 496 U.S. 334, 342 (1990)("It is undisputed that Congress was acting pursuant to the Militia Clauses of the Constitution in passing the Dick Act."). These Acts divided the militia into two distinct classes - the organized militia, to be known as the National Guard, and the reserve militia, composed of all other similar forces that were not a part of the National Guard. Act of Jan. 21, 1903, ch. 196, § 1, 32 Stat. 775.

In 1908, Congress amended the Dick Act to broaden the President's authority to use the National Guard for Federal missions by extending the period National Guardsmen could be called into Federal service and providing that the National Guard could be required to serve "either within or without the territory of the United States." Act of May 27, 1908, ch. 204, § 4, 35 Stat. 399, 400. Facing objection by the Attorney General that the use of the National Guard outside the United States would be unconstitutional, see Weiner, The Militia Clause, at 198 & n. 90 (citing 29 Op. Att'y Gen. 322 (1912)), Congress effected a significant overhaul of the Dick

---

[2] Congress first exercised its constitutional power to organize and discipline the militia by passing the Militia Act of 1792. Act of May 8, 1792, 1 Stat. 271. See Weiner, The Militia Clause, at 187.

Act with the passage of the National Defense Act of 1916 ("1916 NDA").  Act of June 3, 1916, ch. 134, 39 Stat. 166.  See Perpich, 496 U.S. at 343-44; Weiner, The Militia Clause, at 199-200; Military Compensation Background Papers, at 157.

To ensure the military, including the National Guard, could achieve the security requirements of the nation, the 1916 National Defense Act provided for a reorganization and expansion of the Regular Army,[3] created an Officers' Reserve Corps and provided for a Regular Army Reserve,[4] and significantly amended the provisions pertaining to the unit training and "federalization" of the National Guard.  Weiner, The Militia Clause, at 200.[5]

In 1933, Congress amended the 1916 Act to address the problems created by the mass federalization of the National Guard in World War I.  Perpich, 496 U.S. at 344.  The Act of 1933 created a new Army component, the National Guard of the United States.  The Act of June 15, 1933, ch. 87, 48 Stat. 153.  This component was superimposed on, and identical in personnel and organization to the National Guard of the several states but, in its new status, could be ordered to active duty in time of war or national emergency declared by Congress without the necessity of a "call" through the various state governors.  Perpich, 496 U.S. at 345-46; Military Compensation Background Papers, at 161.

The dual enlistment provisions of the 1933 Act provides the Federal government with two means of summoning the National Guard or its individual members into Federal service.

---

[3]  Act of June 3, 1916, ch. 134, §§ 1-39, 39 Stat. 166, 166-187.

[4]  Id. §§ 30-57, 39 Stat. at 187-197.

[5]  The 1916 National Defense Act further divided the militia into three classes - the National Guard, the Naval Militia, and the Unorganized Militia. Id. § 57, 39 Stat. at 197.

First, the President can call into Federal service the National Guard as a militia to execute the laws of the Union, suppress insurrections, and repel invasions.  Congress' exercise of this militia clause power is codified in Chapter 15 of Title 10. 10 U.S.C. §§ 331-335.  Separately, and more commonly, pursuant to the plenary authority conferred by the Army clause,[6] the Federal government may order to active duty (as opposed to calling forth the militia) any member of the National Guard as a member of a reserve component–the Army National Guard of the United States ("ARNGUS").  10 U.S.C. §§ 12301-12321.  See Perpich, 496 U.S. at 349-50.

The Complaint cites Perpich v. Department of Defense, 496 U.S. 334, 335 (1990) for the proposition that "Except when ordered into federal service, National Guard members retain their exclusive status as members of the state militia." Compl ¶ 114.  Plaintiff's cite to Perpich is puzzling.   The issue in Perpich was the status of National Guard members when ordered to Active Federal service, and the Supreme Court clearly held:

> Each member of the Army National Guard of the United States or the Air National Guard of the United States who is ordered to active duty is relieved from duty in the National Guard of his State or Territory, or of Puerto Rico or the District of Columbia, as the case may be, from the effective date of his order to active duty until he is relieved from that duty. 32 U.S.C. § 325(a).

Perpich v. Dep't of Def., 496 U.S. 334, 347-348 (U.S. 1990).   The Court does discuss the status of National Guard units when not called to active federal service and just as clearly indicates that these units serve a dual State and Federal Role.  The Court states:

> Since 1933 all persons who have enlisted in a state National Guard unit have simultaneously enlisted in the National Guard of the United States. In the latter capacity they became a part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retained their status as members of a separate state Guard unit.

---

[6] U.S. Const. art. I, § 8, cl. 12.

Perpich v. Dep't of Def., 496 U.S. 334, 345 (U.S. 1990).  Plaintiff's assertion that National Guard

troops are exclusively state entities when not called to active federal service is simply wrong.

In the alternative, the government is entitled to Summary Judgment on Count I.  The

ABCMR discussed this issue at length in its decision stating:

> 21. In regards to Federal Protection for National Guard Whistleblowers, the GAO Report states that Federal Protection for National Guard Whistleblowers are limited by the dual Federal-State statutes. Federal protections apply only to Guard members who are in Federal duty or training status. Federal protections do not apply to Guard members who are in a State active duty status; their protections, if any, derive from State law. The military whistleblower protection statute requires the DODIG to expeditiously investigate a whistleblower's allegation of reprisal that it receives within 60 days of the member's initial awareness of an adverse action.

> 22. DODI 7050.6, Military Whistleblower Protection, provides the policies and responsibilities for military whistleblower protection. It provides, in pertinent part, that no person may take or threaten to take an unfavorable personnel action, or withhold or threaten to withhold a favorable personnel action, in reprisal against any member of the Armed Forces for making or preparing a protected communication. It goes on to state that no investigation is required when a member of the Armed Forces submits a complaint of reprisal to an authorized IG more than 60 days after the date that the member became aware of the personnel action that is the subject of the allegation. It also provides that the DODIG shall investigate or oversee DoD Component IG investigations of allegations of reprisal when it receives notification from a Military Department IG of reprisal allegations submitted to them by members or former members of the Armed Forces and expeditiously notify the Military Department IG concerned of decisions to retain such allegations for investigation. That instruction defines a member of the Armed Forces as all Regular and Reserve Component members of the Army, Navy, Air Force, Marine Corps and Coast Guard (when operating as a military service in the Navy) on active duty; and Reserve Component members in any duty or training status (includes officers and enlisted members of the National Guard).

AR 160.  Read with an understanding of the dual role of the National Guard outlined in Perpich

*supra*, the GAO report cited by both the ABCMR and Plaintiff in paragraph 119 of the

complaint, makes clear that National Guard soldiers are protected by the Federal Whistleblower

Protection Act when called to Active Federal service, or when in their reserve status as members of the Army National Guard of the US, and only lose that protection when called into active state service.

Given the extensive discussion of this issue in the ABCMR opinion, Plaintiff's cite to Calloway v. Brownlee, 366 F. Supp. 2d 43 (D.D.C. 2005) is unavailing.  Even assuming that Plaintiff's claim that the Military Whistle Blower Protection Act does not apply to the National Guard could be considered a non-frivolous claim, the ABCMR did consider the claim.

**B. Counts II and III Fail to State Claims for Which Relief Can Be Granted Because They Are Based upon an Erroneous Reading of the Army Regulation 20-1.**

**1. The ABCMR Correctly Concluded That the DAIG Properly Investigated Plaintiff**

Counts II and III allege that Army Regulation (AReg) 20-1 precluded the Department of the Army Inspector General from investigating the allegations leveled against plaintiff.  Count II alleges that because the complaining officer, Captain Ward, did not bring the complaint within 60 days of the alleged incident, that the IG was precluded from investigating the allegation.  Count III alleges that because Captain Ward had other administrative remedies available that the IG was precluded from investigating the allegation.  Both Counts fail to state a viable claim because they are founded on an erroneous interpretation of the applicable regulation.

The Army's ability to investigate a senior officer accused of wrong doing is not limited by the actions of the complaining witness.  Paragraph 1-8 of AReg 20-1 defines the IG's sphere of activity to include everything for which the commander or the State AG is responsible to the United States and over which the commander or State AG has Federal authority.  As the ABCMR explained:

Army Regulation 20-1 prescribes the responsibilities, policies and duties and procedures of the Inspector General (IG). It provides, in pertinent part, that the regulation applies to members of the Active Army, the Army National Guard (including periods when operating in its National Guard capacity if a Federal interest exists), the Army Reserve and Department of the Army civilian employees and nonappropriated fund employees. It further provides, in pertinent part, that the IG will process DOD Hotline cases that relate to Army activities, will process DOD whistleblower reprisal cases that relate to Army activities and that the IG will conduct investigations and inquiries directed by the Secretary of the Army, the Under Secretary of the Army, the Chief of Staff of the Army, the VCSA, or as determined necessary by The Inspector General (TIG). The IG sphere of activity includes everything for which the commander is responsible to the United States and over which the commander or State Adjutant General has Federal authority. The definition of Federal interest, as used in this regulation, means those areas in which the Federal Government has legitimate concern. By definition, if the matter is not of Federal interest, it is a matter of State interest. In the abstract, the role of the active Army IG in Army National Guard matters is relatively simple. If the issue the IG is looking at involves a Federal interest, the Active Army IG may inspect, investigate, or assist. If the issue does not involve a Federal interest, the Active Army IG cannot act. Application of the simple principle is not so easy. Lines of demarcation can not be drawn, thus each case must be looked at independently to determine if Federal interest exists. The authority of the active IG to act in ARNG matters is very broad but not without limitations. All questions of Federal versus State interest will be discussed with the Staff Judge Advocate office. The following are included within the area of Federal interest: the organization, training, operations, supply, procurement, fiscal matters connected with ARNG, examination of material prepared relevant to the returns and reports State Adjutants General are required to make to the Secretary of the Army, activities that, if true, would be a basis for withdrawal of Federal Recognition, and exercise of command function, although generally a matter of State interest, which include, but are not limited to, substandard performance of duty and moral or professional dereliction.

Clearly, Plaintiff's interpretation is at odds with the plain language of the regulation.

**2. Alternatively Defendant is entitled to Summary Judgment on Counts II and III**

Alternatively Defendant is entitled to Summary Judgment on Counts II and III. As the ABCMR concluded that "[w]hile the applicable laws and regulations indicate that a whistleblower complaint should be received within 60 days of discovery, it does not preclude the Department from considering or investigating complaints after 60 days. It is also concluded that:

12

The Army had a Federal interest in the applicant not only due to his status as an officer but also in regards to Federal Recognition and his position as the deputy commander of a one-of-a kind unit that is also an active Army unit with a contingency/deployment mission. Accordingly, the IG had a responsibility to investigate any matters it deemed appropriate to the events at hand (regardless of the outcome) if authorization from the appropriate authority was obtained beforehand. Such authorization was obtained from the VCSA in accordance with the applicable regulations and there appears to be no violations of the applicant's rights in that matter.

These findings are not arbitrary or capricious, indeed they are compelled by the administrative record. Given the extensive discussion of this issue in the ABCMR opinion, Plaintiff's cite to <u>Calloway v. Brownlee</u>, 366 F. Supp. 2d 43 (D.D.C. 2005) is unavailing. Even assuming that Plaintiff's claim that the DAIG's authority to investigate allegations of misconduct by a senior officer were proscribed by the actions of the complaining witness could be considered a non-frivolous claim, the ABCMR did consider the claim.

## C.  Count VIII Fails to State a Claim upon Which Relief Can Be Granted Because it Is Based on an Erroneous Interpretation of Army Regulation 20-1.

Plaintiff admits that he was informed of the substance of the allegations against him. Plaintiff states that prior to interviewing him, the DAIG investigator informed plaintiff that:

The investigator advised COL Appleby that: you are suspected of the following allegations which we want to question you about: That you improperly relieved an officer; that you improperly processed Officer Evaluation Reports; and that you reprised against an Officer for making a protected communication.

Compl. ¶ 252.

While Plaintiff refers to this notice as "cursory" (Compl ¶ 251) and alleges that he was not provided "the specific actions that formed the basis of the allegations against him," Plaintiff does not explain how the admitted notice violates AReg 20-1. Plaintiff quotes the Regulation as

13

providing that "[i]f the individual was not informed of the unfavorable information during the IG investigation, the IG will advise the person concerned, orally or in writing, of its substance before the IG investigation is completed." Compl 248. By his own admission, Plaintiff was advised orally of the substance of the allegations (improperly relieving an officer, improperly processing an Officer Evaluation Report and reprising against an officer) and that this notification was done prior to the completion of the investigation (before each interview with the Plaintiff). Even if true, Plaintiff's allegations do not amount to a violation of the regulation.

Alternatively, defendant is entitled to Summary Judgment on Count VIII. The ABCMR noted the issue stating:

> He continues by stating that from the onset of the investigation, he was denied his procedural right of notice and response. He was never informed by the DAIG, orally or in writing, of the specifics of the allegations against him. It was not until 14 March 2001, 5 months after his name was removed from the promotion list that he first learned of the allegations against him from the DAIG, when it conducted an interview with him and then only in a cursory manner.

AR 153. Based on Plaintiff's admission that he was informed of the basis of the allegations, the ABCMR's decision that Plaintiff had failed to produce evidence of error or injustice was reasonable and supported by the record.

**D. Defendant is Entitled to Summary Judgment Based Upon the Administrative Record**

Under the APA, the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious if the agency has failed to follow procedure as required by law (5 U.S.C. §706(2)(D)), or has entirely failed to consider an important aspect of the problem. *See* Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.

Co., 463 U.S. 29 (1983).

Plaintiff has the burden of showing by cogent and clearly convincing evidence that the challenged decision was the result of a material legal error or injustice. *See* McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998); Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994). Moreover, military officials are presumed to have discharged their duties lawfully and in good faith. *See* McDougall, 20 F. Supp. 2d at 82; Hoffman v. United States, 894 F.2d 380, 385 (Fed. Cir. 1990). Consequently, "perhaps only the most egregious decisions may be prevented under such a deferential standard of review." Kreis, 866 F.2d at 1515.

"When reviewing a decision by a military Correction Board, a Court must do so under an 'unusually deferential application of the arbitrary or capricious standard of the APA.'" Lebrun v. England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002)(quoting Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002)); see also Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006)(Review of miliary correction board decision is to be under a particularly deferential standard of review).

The administrative record in this case fully supports the decisions of the ABCMR. The ABCMR reviewed the allegations raised by Plaintiff and in a fourteen page opinion found that Plaintiff had failed to provide evidence to the satisfaction of the Board that the record was in error or unjust. AR 164. Having considered the claims that Plaintiff now urges upon this Court, the ABCMR determined that Plaintiff's nomination for promotion was properly withheld from the Senate (AR 164), that the substantiated findings of the IG required another look by the Promotion Review Board (AR 163) and that before the PRB process could be completed, Plaintiff had reached his maximum years of service.

15

**1. The Delay in Plaintiff's Promotion was Proper.**

Plaintiff alleges that the delay in his promotion was unlawful because he was not under investigation at the time his nomination was first withheld from the Senate.  The ABCMR addressed the contentions, stating " The applicant's contention that his promotion was unjustly and illegally withheld from Senate confirmation has been noted and found to be without merit." AR 161.  It went on to state:

> Although the complaint that was received at the time the applicant was scheduled for Senate confirmation for promotion to the rank of BG was subsequently determined unfounded for reprisal, the investigation uncovered additional information that would be expected to be made available for Senate confirmation, regardless of how serious or unimportant the applicant may deem it. Accordingly, his name was properly withdrawn until such time as the investigation was finalized.

AR 162.  As Plaintiff concedes, 10 U.S.C. § 14311, paragraph (a)(1)-(c) provides that "the appointment of an officer to a higher grade may be delayed if … an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer." Compl ¶ 169.  Plaintiff further concedes that at the time of the removal of his name for consideration by the Senate that the DAIG had received the allegation of a violation of the Military Whistleblower Protection Act, Compl. ¶¶ 177-184, and that DAIG received a directive for investigation from the Vice Chief of Staff for the Army in January 2001.  Compl ¶ 175. Plaintiff's assertion that the Army was required to forward his nomination to the Senate for confirmation of his promotion to the rank of Brigadier General, because the investigation into his alleged wrong doing was still in the informal stage at the time he was to be considered by the Senate is meritless.  Clearly, Plaintiff was under investigation at the time the Senate was to take up his nomination.  AR 156, Compl 173-174.  The plain meaning of 10 U.S.C. § 14311,

16

paragraph (a)(1)-(c) "the appointment of an officer to a higher grade may be delayed if … an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer," allows the withholding of a nomination, where, as here the military has received information warranting an investigation into the conduct of a senior officer.

> **2.  The ABCMR Correctly Concluded That Plaintiff's Application Did Not Establish a Lack of Written Notification and Showed No Prejudice from the Oral Notification.**

Plaintiff acknowledges that he was notified of the decision to withdraw his name from consideration by the Senate.  Compl ¶¶ 19, 20.  Plaintiff however, argues that the Army failed to provide him written notification.   The ABCMR addresses this issue stating:

> The evidence surrounding the applicant's notification of removal from the confirmation list, or the lack thereof, is not present in the available evidence; however, the applicant acknowledges that he was notified telephonically by senior officials. While the lack of written notification is not condoned, there is no evidence submitted by the applicant with his application to support that contention or evidence of any harm that resulted from his telephonic notification vice written notification.

AR 162.  Not all errors require correction. The Secretary need not correct even an acknowledged error where there is no harm to the applicant.  Kreis v. Secretary of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  The Court in Kreis explained:

> The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice. Drawing upon our own experience, we can readily envision the Secretary, for example, exercising his discretion not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed.

> Kreis v. Secretary of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989).

Even if Plaintiff had shown that he did not receive written notice, the Board reviewed the

evidence and reasonably concluded that Plaintiff suffered no harm from receiving his notice telephonically.  AR 162.

### 3. At the Secretary of Defense's Request, Congress Lawfully Withheld Consideration of Plaintiff's Promotion

Plaintiff's argument that his promotion delay violated 10 U.S.C. § 624 is without merit. The ABCMR addressed this claim noting that an advisory opinion from the General Officer Management Office (GOMO) indicated that the Secretary of Defense had requested that the "**Congress** withhold the applicant's nomination until the investigation was complete and a determination of suitability was made, which effectively authorized a promotion delay past a 6-month period."  AR 158 (emphasis added).  The advisory opinion states:

> On September 13, 2000, COL Appleby's nomination for Federal recognition to the grade of brigadier general was received in the Senate. On September 29, 2000, the Department of the Army Inspector General received an adverse allegation ascribed to COL Appleby. On October 3, 2000, the Army notified the Secretary of Defense, as required by DODI 1320.4, paragraph 6.2.1.7, and the Secretary of Defense subsequently requested that Congress withhold COL Appleby's nomination until the investigation was complete. Accordingly, COL Appleby's nomination was appropriately withheld.

AR 31.  Plaintiff's nomination was already with the Senate at the time the DAIG received the allegations.  The Army did not delay Plaintiff's promotion, rather the Secretary of Defense asked the Senate to delay its consideration.  10 U.S.C. § 14311 does not compel action by the Senate, nor proscribe what officials can request that the Senate delay action.

The ABCMR's conclusion that Plaintiff's "contention that his promotion was unjustly and illegally withheld from Senate confirmation has been noted and found to be without merit" is not arbitrary, capricious or contrary to law.

18

### 4. Plaintiff was Lawfully Retired

When the Secretary of Defense asked the Senate to withhold consideration of Plaintiff's nomination, he asked that the nomination be withheld "until the investigation is complete... and a determination of suitability" made.  AR 31.   The DAIG investigation of Plaintiff revealed adverse information that warranted a review by a Promotion Review Board before a determination of suitability could be made.  AR 163.  Reviewing the evidence the ABCMR concluded:

> Although the applicant does not agree with the findings of the IG, there were substantiated findings that would have required another look by a PRB process to determine if his name should be resubmitted for confirmation by the Senate. The PRB process is not a short process and is one that requires several months to accomplish. Accordingly, once he had met his maximum years of service and was transferred to the Retired Reserve, he was no longer eligible to be considered for promotion.

On July 31, 2001, Plaintiff reached his maximum years of service for an Active Reserve Colonel and was transferred to the Retired Reserve.  AR 162.  10 USCS § 14507 requires Reserve Colonels with thirty years of service to be retired unless he or she is on a list of officers recommended for promotion to the next higher grade.  10 USCS § 14507(b).  Plaintiff was not on a list recommended for promotion as the suitability determination had not been made. The ACBMR addressed this issue stating:

> the investigation was concluded on 29 June 2001 and the applicant was transferred to the Retired Reserve on 31 July 2001, due to maximum years of service. While it is unfortunate that the applicant reached his maximum years of service before he could be reconsidered for promotion, the evidence does not suggest that there was any conspiracy or specific effort to deny him an opportunity to be re-considered for promotion. The clock simply ran out on him as it does on many officers in similar circumstances.

AR 163.

19

The ABCMR also considered Plaintiff's response to his retirement and concluded that Plaintiff chose not to undergo the PRB process again. AR 163. To reach this conclusion the ABCMR noted that Plaintiff provided an E-mail to his colleagues discussing his voluntary retirement and the three-year interval between his retirement and his application to the Board. Given the requirement that he be retired, and Plaintiff's apparent acceptance of that decision, the ABCMR reasonably concluded that no correction to Plaintiff's records was warranted.

While Plaintiff undoubtedly disagrees with the ABCMR's decision, that does not amount to a successful legal challenge to the decision. Further, Plaintiff's assertion that the Board did not consider and discuss - at least to the satisfaction of Plaintiff - every conceivable legal point raised by Plaintiff cannot result in this Court substituting its judgment in such matters, especially in this case where the main issues are clear. In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharmaceutical, 133 F.3d at 16 (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43). The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dickson, 68 F.3d at 1404 (quoting Bowman, 419 U.S. at 286). The ABCMR's path in this matter is easily discerned and completely justified.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court dismiss Plaintiff's

20

Complaint with prejudice.

                                        Respectfully submitted,


_____/s/_____
        KENNETH L.  WAINSTEIN, D.C.  Bar #451058
                                        United States Attorney


_____/s/_____
                                        RUDOLPH CONTRERAS D.C. Bar No.
434122
                                        Assistant United States Attorney


_____/s/_____
                                        KEVIN K. ROBITAILLE
                                        Special Assistant U.S.  Attorney
                                        555 Fourth Street, N.W., 10th Floor
                                        Washington, D.C.  20530
                                        (202) 353-9895
Of Counsel:
Major Louis Birdsong
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837


21