## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CHARLES C. APPLEBY,                )
                                   )
            *Plaintiff*,           )
                                   )
    v.                             )
                                   )        Civil Action No. 06-0193 (RBW)
                                   )
FRANCIS J. HARVEY,                 )
Secretary of the Army              )
                                   )
            *Defendant*.           )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, IN PART, AND FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Colonel ("COL") Charles C. Appleby (ret.), Plaintiff, respectfully submits this memorandum in support of his cross-motion for summary judgment and in opposition to Defendant's motion to dismiss in part and for summary judgment. COL Appleby demonstrates below that he has stated claims upon which relief may be granted, there is no genuine dispute as to any material fact, and the application of the law to the facts requires the entry of judgment in his favor. COL Appleby respectfully requests that oral argument be granted in this case.

This case involves the delay of a highly distinguished military officer's promotion to the rank of Brigadier General. The case illustrates the ease with which a disgruntled servicemember can destroy a distinguished officer's career and reputation, simply by filing an unfounded inspector general complaint at the eleventh hour. It further illustrates the disastrous consequences that may befall a military officer where the Army fails to understand and adhere to federal statute

and its own regulations, in violation of the officer's rights to due process of law under the Fifth Amendment to the U.S. Constitution.

The primary statutes and regulations applicable to this action, 10 U.S.C. § 14311, 10 U.S.C. § 1034, Army Regulation ("AR") 600-8-29, and AR 20-1, create procedural rights that help ensure that officers' promotions are not maliciously or otherwise wrongly delayed or terminated, and that inspector general investigations do not become a vehicle for the delay of officers' promotions or attacks on their careers based on ill-motives. They failed to protect COL Appleby in this case not because the law is inadequate, but because the Army failed to respect the law.

COL Appleby then sought to correct his records and remedy the injustices inflicted upon him by the Army by applying to the Army Board for the Correction of Military Records ("ABCMR"). The ABCMR, however, failed to consider the majority of COL Appleby's claims of error and injustice, and ignored the considerable evidence COL Appleby submitted with his application. In a decision that is illogical in many instances, factually incorrect in others, and that does not make even a rational connection between the evidence and its conclusions, the ABCMR denied COL Appleby the relief he requested. Importantly, the ABCMR did so despite an advisory opinion from the National Guard Bureau ("NGB") recommending that COL Appleby's name be restored to the promotion list and returned to the Senate for confirmation and if confirmed, award him a date of rank of October 6, 2000, when he otherwise would have been promoted.

The arguments presented below demonstrate that COL Appleby more than satisfied the preponderance of evidence standard required by the ABCMR to demonstrate the existence of

error and injustice warranting the correction of his records. The ABCMR's decision was arbitrary, capricious, not supported by substantial evidence, and contrary to law. This Court should grant COL Appleby's cross-motion for summary judgment and deny Defendant's motion to dismiss in part, and for summary judgment.

## II. <u>STATEMENT OF FACTS</u>

COL Appleby served our nation with distinction as a military officer for 30 years. On March, 1999, he was selected by the Adjutant General ("TAG") of the Florida National Guard ("FNG") to assume command of a Florida National Guard Major Command, and to serve simultaneously as the Deputy Commanding General of the 32d Army Air and Missile Defense Command (an active duty Army Headquarters). Admin. Rec. at 8.  He formally assumed command on June 5, 1999 and began the process of nomination and approval for promotion to Brigadier General.  *Id.*

COL Appleby's selection for promotion to Brigadier General was announced by the Secretary of Defense on July 27, 2000, and was submitted by the President to the Senate for confirmation on September 13, 2000. Compl. ¶ 15.  On September 26, 2000, an anonymous complaint was made with the Inspector General ("IG"), FLARNG, alleging that COL Appleby had reprised against the complainant for making a protected communication.  Admin Rec. at 330. The IG forwarded the complaint to the Department of the Army Inspector General ("DAIG") on or around September 28, 2000. *Id.* The DAIG treated the complaint as falling within 10 U.S.C. § 1034, the "Military Whistleblower Protection Act."  *Id.*

On October 3, 2000, Major General ("MG") Ronald O. Harrison, TAG, FNG, informed COL Appleby via telephone that he was being temporarily removed from the list of officers to be

submitted to the US Senate for confirmation of promotion to Brigadier General at the behest of the DAIG. Compl. ¶ 19. On October 6, 2000 MG Joseph R. Inge, the Deputy DAIG, contacted COL Appleby and advised him that a reprisal complaint had been filed against him only hours before his promotion was to be confirmed. Compl. ¶ 20. COL Appleby was provided no details surrounding the complaint, such as the identity of the complainant, the nature of the allegations, nor the time-frame to which the complaint pertained. Compl. ¶ 21. No action was ever taken to formally remove COL Appleby from the list of officers recommended for promotion to Brigadier General.[1]

On January 24, 2001, COL Urrutia contacted COL Appleby and indicated that that the DAIG was requesting authority from General Keane, the Vice Chief of Staff of the Army, to conduct an IG Investigation. Compl. ¶ 27. On January 31, 2001, General Keane issued a Directive for Investigation, instructing the DAIG to "investigate alleged improprieties by senior officials," including COL Appleby. Admin. Rec. at 442-443. The initial allegation against COL Appleby was that he had reprised against a subordinate officer for making a protected communication under the Military Whistleblower Protection Act, 10 U.S.C. § 1034.

On May 16, 2001, the DAIG obtained approval from General Keane for an expanded investigation to include allegations of reprisal for making protected communications involving two additional officers who had not filed complaints against COL Appleby. Admin. Rec. at 333. The original reprisal complaint was unsubstantiated in the early stages of the IG process. Admin. Rec. at 341. The additional reprisal allegations stemmed from Letters of Concern ("LOC")

---

[1] In COL Appleby's complaint, at ¶ 267, counsel erroneously stated that he was removed from the Brigadier General Promotion List. The correct factual averment is that COL Appleby's name was withheld from the list sent to the Senate for confirmation. As discussed below, the President of the United States did not remove COL Appleby from the actual promotion list.

issued by COL Appleby to MAJ Hulen and LTC Bacon. Admin. Rec. at 332. The LOCs provided the sole basis for the DAIG's consideration of the additional reprisal allegations. Admin. Rec. at 333.

On July 9, 2001, MG Inge informed COL Appleby that General Keane had approved the IG's Report of Investigation ("ROI"). Compl. ¶ 34. MG Inge also advised COL Appleby that the mitigating circumstances noted in the ROI should permit his nomination to proceed directly to the Senate for confirmation. Compl. ¶ 35. On July 9, 2001, COL Appleby submitted a Freedom of Information Act request for the ROI. Compl. ¶ 36. On July 13, 2001, COL Appleby wrote COL Bruce Davis, Chief of Staff, FLARNG, stating, "I will receive a report from the Vice/TJAG [The Judge Advocate General] to which I will have 30 days to respond. …I hereby demand my right for experienced and competent legal representation to assist in that response. Can I be in a retired status and do all that? If not, I would like to be transferred to a non-drill status that would allow that." Admin. Rec. at 498. COL Davis informed COL Appleby that he would have to repeat the entire promotion selection process which normally takes 6-9 months to complete. That information was incorrect. Compl. ¶ 38. COL Appleby never received a report from the Vice/TJAG to which he could respond.

On July 16, 2001, COL Appleby underwent unexpected surgery for colon cancer. Compl. ¶ 39. Due to post-operative complications, he remained hospitalized for 14 days. *Id.* By letter dated July 17, 2001, while COL Appleby was still hospitalized, the DAIG notified COL Appleby of its completion of the investigation. Compl. ¶ 40. Before COL Appleby was released from the hospital, he received orders involuntarily retiring him for maximum years of service, effective July 31, 2001. Compl. ¶ 41.

On August 21, 2001, 21 days after he was involuntarily retired, COL Appleby received a highly redacted copy of the ROI. Admin. Rec. at 330 to 441. The ROI substantiated three allegations against COL Appleby: 1) he failed to ensure that a subordinate commander was properly relieved from a command position; 2) he improperly prepared and processed an annual OER; and 3) he reprised against two officers for making protected communications. *Id*. On October 19, 2001, based on the DAIG investigation, MG Keane issued COL Appleby a LOC. The LOC was not filed in COL Appleby's Official Military Personnel File ("OMPF"). Admin. Rec. at 444.

On July 9, 2002, COL Appleby complained to Ander Crenshaw, U.S. House of Representatives. Compl. ¶ 48. Rep. Crenshaw's office issued an inquiry which was forwarded to the DAIG on or around October 4, 2002. Compl. ¶ 49. By letter dated June 12, 2003, the DAIG informed Rep. Crenshaw that "COL Appleby was voluntarily retired effective July 31, 2001. As a result, COL Appleby was properly deleted from the list of officers recommended for Federal recognition to the higher grade, subsequent to his placement in the Retired Reserve." Compl. ¶ 50.

**Application to the ABCMR**

On March 23, 2003, COL Appleby filed an application with the ABCMR requesting that the Board: (1) direct that he be promoted by operation of law to the rank of Brigadier General; (2) remove the Letter of Concern from his military personnel file; (3) award him all back pay, allowances, and benefits to which he is entitled; (4) retire him at the rank of Brigadier General with all associated rights, benefits, and privileges or, alternatively, reinstate him to the FLARNG at the rank of Brigadier General, crediting him with service in the rank of Brigadier General from

6

the date he otherwise would have been promoted to the date of reinstatement. Admin. Rec. at 208-255.

By memorandum dated September 30, 2004, the ABCMR provided COL Appleby with an advisory opinion prepared by the National Guard Bureau General Officer Management Office. Admin. Rec. at 18-20. The advisory opinion recommended to the Board that COL Appleby's nomination should be forwarded to the Senate for confirmation consideration and, if confirmed, his records should be corrected to reflect promotion to Brigadier General with a date of rank of October 6, 2000, with a subsequent retirement date at the rank of Brigadier General of July 31, 2000. *Id.* On August 11, 2005, the ABCMR denied COL Appleby's application. *Id.*

## Background to the DAIG Complaint and Investigation

At the time COL Appleby assumed command, numerous serious leadership issues affecting the command climate existed. Admin. Rec. at 323. Most problematic was 3rd Battalion, 265th Air Defense Artillery. *Id.* Prior to COL Appleby's assumption of command, the former commander, Brigadier General ("BG") Neff, had ordered an investigation into allegations that a non-commissioned officer ("NCO"), Staff Sergeant ("SSG") Shrout, had forged signatures on official supply documents. Compl. ¶ 57. Based on the results of that investigation, BG Neff approved the investigating officer's ("IO") recommendation that the NCO's Active Guard and Reserve status be terminated. Compl. ¶ 58.

Shortly after assuming command, COL Appleby received the paperwork required for terminating the NCO's status. Compl. ¶ 59. In accordance with the applicable regulation, the subject NCO submitted a rebuttal for COL Appleby's consideration. Compl. ¶ 60. Because the rebuttal raised command-related issues not addressed by the Investigating Officer ("IO"), COL

Appleby appointed a new IO, Major ("MAJ") Barselou, to investigate the matters raised in the rebuttal. The IO reported to COL Appleby on December 14, 1999, and raised issues of serious concern over the conduct of a Company Commander, CPT Ward, and the Battalion Executive Officer, MAJ Hulen. The investigator concluded that the allegations of forgery against SSG Shrout were unsubstantiated. Admin. Rec. at 293-295.

Because of the seriousness of the matters uncovered by the investigation, COL Appleby directed a review of the IO's report, along with recommendations for action, from his Deputy Commander, the Staff Judge Advocate ("SJA"), and the IG. Admin. Rec. at 300-312.

On January 14, 2000, COL Appleby met with the Battalion Commander, Lieutenant Colonel ("LTC") Bacon, and provided him with a copy of the investigative report along with a summary of the allegations prepared by the Deputy Commander, the SJA, and the IO. Admin. Rec. at 309-312. LTC Bacon reviewed the information and determined that: 1) Captain ("CPT") Ward should be relieved of his command and referred for Courts-Martial; 2) First Lieutenant ("1LT") Douglas S. Digby should be given non-judicial punishment under Article 15 of the UCMJ (10 U.S.C. § 815) and transferred to a different unit; and 3) MAJ Hulen should receive a Letter of Reprimand ("LOR"). Admin. Rec. at 315. The decision to initiate these actions was within the command authority of LTC Bacon. LTC Bacon did not ask COL Appleby to formally approve CPT Ward's relief of command or Courts-Martial. Admin. Rec. at 313-314.

CPT Ward resigned his commission after LTC Bacon relieved him from command. COL Appleby was unaware of the adverse action taken by LTC Bacon until after CPT Ward had resigned. Compl. ¶¶ 71-72.

The allegations of misconduct that gave rise to the investigation against CPT Ward and the other officers included credible evidence that CPT Ward had abused soldiers under his command in front of other soldiers and had made threats against one soldier. Admin. Rec. 293-295. The allegations of abusive treatment were made by several different soldiers under penalty of perjury. *Id*. The allegations strongly indicated the existence of serious command climate and morale problems that were undermining the effectiveness of the unit. Additionally, there were generalized concerns that the battalion was in disarray and that morale was suffering. Admin. Rec. at 324-325.

A memorandum from Command Sergeant Major ("CSM") Wilkinson, the senior Non-Commissioned Officer of the Command and a member of COL Appleby's personal staff to COL Appleby demonstrated that serious leadership issues existed within the battalion that required urgent correction. CSM Wilkinson observed that while "[t]he soldiers of the 3rd Battalion are highly motivated and eager to do the job, they are desperately looking to their leadership for help." *Id*.

As a result of these serious concerns, on March 3, 2000 COL Appleby again appointed MAJ Barselou to conduct an additional investigation regarding concerns over forged signatures on supply room documents. Compl. ¶ 80. That investigation also concluded that the allegations of forgery against SSG Shrout were unsubstantiated. Compl. ¶ 81. The investigation did raise very serious issues about the leadership and integrity of key battalion officers, notably MAJ Hulen and LTC Bacon. Compl. ¶ 82. COL Appleby directed that his Deputy Commander, the SJA, the IG, and his Administrative Officer ("AO") review the report of investigation for legal

sufficiency. Those officers determined that the investigation was conducted properly. Compl. ¶ 84.

On May 30, 2000 the SJA wrote COL Appleby and provided a summary of the investigative results. Compl. ¶ 85. The SJA concluded that there was no loss of property and no forgery was committed. Compl. ¶ 86. He further noted that MAJ Hulen and LTC Bacon apparently had made statements under oath that were not supported by the evidence. Compl. ¶ 87.

After carefully considering the two AR 15-6 investigations and the assessments thereof provided by the SJA, COL Appleby determined that the evidence that the two officers had made false official statements was not conclusive. Compl. ¶ 88. COL Appleby concluded that both officers should be counseled regarding their conduct, which COL Appleby chose to do by way of letters of concern (LOC's"). COL Appleby directed his SJA, LTC R. B. Davis, to prepare the LOC's for his Battalion Commander and Battalion Executive Officer. Compl. ¶ 90. COL Appleby approved and signed the LOC's. Admin. Rec. at 326-329.

The LOC's, dated June 6, 2000, addressed the management and supervisory failures of those two officers as documented by the AR 15-6 investigations, which themselves had been reviewed and approved by FLARNG legal officers and the Inspector General. *Id*. In the LOC to LTC Bacon, COL Appleby directed him to "assure that all subordinates use proper personnel management procedures...or that they establish some other Army-approved management system, for supervising all AGR soldiers...[and] insure that no further allegations of misconduct [be] sent to this headquarters unless your command carefully screens the allegations for bias, objectivity, validity and accuracy." *Id*. COL Appleby did not tell LTC Bacon not to report allegations of

10

misconduct, as later alleged by the DAIG, and did not counsel LTC Bacon for having reported the alleged misconduct. Compl. ¶ 93.

The LOC to MAJ Hulen provided that "within 30 days of the receipt of this letter, you shall establish and implement an Army-approved personnel management policy...or another office management procedure approved by the U.S. Army Institute of Administration...you shall also provide your Battalion Commander with a copy of written goals and objectives, task lists and worksheets for each AGR soldier under your leadership...." Admin. Rec. at 328-329.

COL Appleby specifically advised the two officers in the LOCs that the letters were not official reprimands and would not be placed in the officers' Official Military Personnel Files. Admin. Rec. at 326-329. The LOCs resulted in no adverse action against the officers and served only as written counseling statements to provide clear instructions for corrective action and guidelines for the future handling of similar matters.

Such actions were not only within the scope of authority of COL Appleby, they were demonstrably necessary actions, based on continuing command climate, leadership and administrative problems in the battalion (in addition to the two separate Army Regulation 15-6 investigations, both of which had been reviewed for legal sufficiency), to ensure the fair treatment of all subordinates and the effective management of all Active Guard Reserve personnel generally.

The investigations themselves, and their reviews by senior officials, led to COL Appleby's issuance of the LOCs and to the adverse actions against the officers, not the accusations of unlawful conduct made against SSG Shrout. Compl. ¶ 101; Admin. Rec. at 291-292. On October 16, 2000, COL Appleby received an e-mail from his Deputy Commander

containing a request by CPT Ward for a commander's inquiry regarding his relief from command, a related Officer Efficiency Report ("OER"), and a missing OER.  Admin. Rec. at 316-317.

To ensure a fair and unbiased review of all actions taken by LTC Bacon against CPT Ward and the other officers, on November 3, 2000 COL Appleby forwarded the complete package to his superior officer and rater, BG Jim Watson, Assistant Adjutant General, FLARNG, for his review. BG Watson then instructed his SJA, COL Henry T. Swann, III, to conduct an independent review of the adverse actions taken by LTC Bacon. On December 4, 2000, BG Watson provided COL Appleby with a copy of COL Swann's legal review.  Admin. Rec. at 318-322.

COL Swann concluded that "ample evidence exists to justify the adverse action. ...The action [LTC Bacon] chose is supported by the Findings and Recommendations of the various AR 15-6 investigations." *Id*. The review concluded that "[t]he Bde Cdr [COL Appleby] was well within his discretion to take the action he took against these three officers." BG Watson concurred with all actions taken against the officers.  *Id*.

### III.  <u>STANDARDS OF REVIEW</u>

**Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(1)(6)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F, Hoffman-LaRoche, Ltd.*, 315 F.3rd 338, 343 (D.C. Cir. 2003) (citations omitted).

A motion made under Fed. R. Civ. P. 12(b)(6) should be granted only if the plaintiffs can

prove no set of facts in support of their claim that would entitle plaintiffs to relief. *Sparrow v. United Air Lines, Inc.,* 216 F.3rd 1111, 1114 (D.C. Cir. 2000). In evaluating a motion to dismiss, the court must presume that plaintiff's factual allegations are true and draw all reasonable inferences in plaintiff's favor. The court also must resolve all factual doubts in favor of the plaintiff. *Calloway v. Brownlee*, 366 F. Supp. 2d 43 (D.D.C. 2005).

**Federal Rule of Civil Procedure Rule 56(c)**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. V. Catrett*, 477 U.S. 317 (1986), quoting Fed. R. Civ. Proc. 56 (c)). "In our view, the plain language of Rule 56 (c)) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning a central element of the non-moving party's case necessarily renders all other facts immaterial." *Id.*, at 322-323.

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

13

477 U.S. at 323.

Once the moving party has met this burden, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 465 U.S. 574, 587 (1986), quoting Fed. R. Civ. Proc. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*., at 587 (internal quote omitted).

**APA Standard of Review**

The Administrative Procedure Act, 5 U.S.C. § 701 *et seq*., authorizes this Court to review decisions of the ABCMR. "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983). "The plaintiff has the burden of satisfying this standard by providing 'cogent and clearly convincing evidence' and must 'overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith.'" *Smith v. Dalton*, 927 F. Supp. 1, 10 (D.D.C. 1996) (citations omitted).

The APA standard of review "mandates that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." *Pension Benefit Guaranty Corp. v. LTV Corp*., 496 U.S. 633, 654 (1990).) In reviewing decisions of the ABCMR, "the court conducting the review must have sufficient information to determine that the [board's] decisions were proper." *Id*. at 12. "Therefore, although the agency need not provide an 'extensive exegis' of the rationale underpinning its decisions, it must sufficiently discuss its <u>reasoning</u> so as to allow a court to <u>review its decisions</u>." *Id*. (citations omitted.) (Emphasis added.)

14

"A court cannot give as much deference to the Board's determination when an agency does not specify the <u>factual or legal grounds</u> for its decision." *Id*. at 13 (citations omitted). (Emphasis added.)  "Finally, in reviewing an administrative body's decision, the court must examine whether or not the agency has <u>considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'</u>" *Id*.  (Emphasis added.)  "A reviewing court 'may not supply a reasoned basis for the agency's decision that the agency itself has not given.'" *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1406 (D.C. Cir. 1995)(quoting *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)).

## IV.   <u>ARGUMENT</u>

### 1. The Army Violated Plaintiff's Constitution Right to Due Process of Law by Ignoring the <u>Requirements of 10 U.S.C. § 14311 and AR 600-8-29 in Delaying His Promotion</u>

In his memorandum, Defendant repeats the ABCMR's arguments that COL Appleby failed to demonstrate that the Army did not comply with the notification and response rights created by 10 U.S.C. § 14311 and AR 600-8-29, and that COL Appleby demonstrated no prejudice. Those arguments are meritless.

10 U.S.C. § 14311, ¶(c)(1) states that  "[t]he appointment of an officer to a higher grade <u>may not</u> be delayed under subsection (a) or (b) <u>unless</u> the officer is given written notice of the grounds for the delay."  (Emphasis added.) Paragraph (c)(2) further provides that "[a]n officer whose promotion is delayed under subsection (a) or (b) <u>shall</u> be given an opportunity to make a written statement to the Secretary of the military department concerned in response to the action taken. The Secretary <u>shall</u> give consideration to any such statement." (Emphasis added.)

Army Regulation 600-8-29, ¶1-20, is responsive to the Congressional requirements of 10 U.S.C. § 14311, and provides that "[t]he office preparing the DA [Department of the Army] Form 268 [Report to Suspend Favorable Personnel Actions (Flag)] <u>must</u> give that officer written notice of the reason for the delay of promotion before its imposition or as soon thereafter as possible…. An officer whose promotion has been delayed may make a written statement, expeditiously forwarded through the chain of command, to the Secretary of the Army…."  (Emphasis added.)

Those provisions create vital procedural safeguards for an officer whose promotion is being delayed. Those safeguards are the right to: (1) written notification of the delay and the grounds for the delay; (2) the opportunity to submit a written statement to the Secretary of the Army; and (3) consideration of the statement by the Secretary of the Army. If these conditions are not met, the officer's promotion <u>cannot be delayed</u>.

The administrative record is clear that the Army did not adhere to the requirements of 10 U.S.C. § 14311 and AR 600-8-29. COL Appleby was not notified in writing by the Army of the delay of his promotion and he was not afforded the right to respond in writing to the Secretary of the Army and to receive consideration of his statement from the Secretary of the Army. There simply is no dispute that the required steps in delaying COL Appleby's promotion were not taken.

In addressing this issue, the ABCMR stated, "[t]he evidence surrounding the applicant's notification of removal from the confirmation list, or the lack thereof, is not present in the available evidence; however, the applicant acknowledges that he was notified telephonically by senior officials. While the lack of written notification is not condoned, there is <u>no evidence submitted by the applicant with his application to support that contention</u> or evidence of any harm that resulted from his telephonic notification vice written notification."

The ABCMR's treatment of this issue was arbitrary and capricious in the extreme. It also was not supported by substantial evidence, contrary to law, and made in bad faith. There are several facts that compel this conclusion.

First, COL Appleby could not produce documents that he was never provided. If the Army had notified COL Appleby in writing, as required by statute and regulation, of his promotion delay, those materials would be available in COL Appleby's personnel file. As the administrative record demonstrates, they are not. If the documents did exist, the Army, in providing its advisory opinions to the ABCMR, would have generated them. COL Appleby filed two requests for the promotion delay documents under the Freedom of Information Act and Privacy Act and received no documents. COL Appleby also included a sworn statement in support of his application attesting to the veracity of the facts asserted therein. It was grossly arbitrary and capricious for the ABCMR to imply that COL Appleby's contention was not supported by the evidence of record and imply that he should or could prove the non-existence of records.

Second, the Army in at least one previous decision granted relief for a due process violation far less onerous than those presented here. In ABCMR Docket Number AC97-09752, March 18, 1998, the ABCMR considered the applicant's claim that he was provided a career-damaging MOR without having been afforded an opportunity to review and comment on the MOR. *Id*. at ¶ 5, p. 2. The Board noted that "there is no evidence in the available records to show that the MOR was actually referred to the applicant for rebuttal or comment." *Id*. (Emphasis added.)

In its conclusions section, the ABCMR stated, "[t]he Board notes that the issue in this case is simple due process, an issue the Board does not take lightly. Furthermore, it is an issue that should have been known by all concerned before the MOR was issued and filed in the applicant's

17

OMPF as a matter of official record. While the Board cannot determine if the applicant would have been selected for promotion, he should be afforded the opportunity to compete for promotion without the presence of the MOR in his records." Id., ¶¶ 3 and 4, p. 3.

In ABCMR Docket Number AC97-09752, as in the instant case, the ABCMR confronted an evidentiary record that did not contain evidence showing that the MOR was referred to the applicant for rebuttal and comment. Its response to the issue, however, could not be more different than its response in the instant case. Most notably, the ABCMR did not state that the applicant bore the burden of supplying evidence that the MOR was not referred to him for comment and rebuttal, as it clearly did in the instant case. Additionally, in ABCMR Docket Number AC97-09752, the ABCMR afforded the applicant the desired relief in the absence of evidence of prejudice other than that of lost opportunity.

Third, the ABCMR's claim that COL Appleby presented no evidence of prejudice resulting from the Army's violations of his due process rights is untenable. The prejudice resulting from the Army's violations of COL Appleby's due process rights is self-evident: COL Appleby was denied the opportunity to receive written notification of the grounds for the delay, respond in writing to those grounds, and receive consideration by the Secretary of the Army. COL Appleby, as with the applicant in ABCMR Docket Number AC97-09752, could not produce evidence that his name would not have been withheld from the promotion list because only the Secretary of the Army can make that determination. Similarly to the applicant in ABCMR Docket Number AC97-09752, COL Appleby is entitled to consideration by the Senate for confirmation and retroactive promotion to the grade of Brigadier General.

18

If COL Appleby had been properly notified of the promotion delay, he could have forcefully rebutted the original allegations, which later were demonstrated to be without merit and dropped from the DAIG investigation. The ABCMR could and should have considered that vital fact in considering COL Appleby's application. The ABCMR also should have recognized the tremendously valuable opportunity to contest the allegations at the initial stage of inquiry that the Army deprived COL Appleby of by failing to comply with 10 U.S.C. § 14311 and AR 600-8-29.

As the U.S. Court of Appeals for the District of Columbia Circuit has emphasized, "[t]he military departments are bound to follow their own regulations in the same manner as any other federal agency. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription. It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law, or is instead arbitrary, capricious, or contrary to the statutes and regulations governing that agency." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (internal citations omitted).

Here there is no dispute that the Army failed to comply with 10 U.S.C. § 14311 and AR 600-8-29. COL Appleby suffered severe prejudice as a result. These facts require the entry of judgment in favor of COL Appleby.

### 2. There Was No Legal Basis for Delaying COL Appleby's Promotion

Defendant further contends that COL Appleby's promotion was lawfully delayed because he was under investigation at the time of his promotion delay. Precisely, Defendant argues that the term "investigation," as employed by 10 U.S.C. § 14311, "allows the withholding of a nomination

where, as here the military has received information warranting an investigation into the conduct of an officer." Def's Mem. at 17. Defendant's position is erroneous and contrary to law.

10 U.S.C. § 14311, ¶ (a)(1)-(c) provides that "the appointment of an officer to a higher grade may be delayed if … <u>an investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer</u>." (Emphasis added.) This provision self-evidently contemplates an investigation by a military department into one or more of its members.

Army Regulation 600-8-29, Paragraph 1-19(a)(4) implements this provision, and provides that an officer is in a non-promotable status where he or she is "[u]nder investigation that may result in disciplinary action of any kind being taken against him or her." The only investigation into the allegations against COL Appleby was undertaken by the DAIG pursuant to AR 20-1.

Central to the meaning and effect of these provisions is the term "investigation." 10 U.S.C. § 14311 does not define the term "investigation," though AR 20-1 does. There, an IG Investigation is defined as "[a] fact-finding investigation by a <u>detailed IG</u> into allegations, issues, or adverse conditions, to <u>provide the directing authority</u> a sound basis for decision and actions. Inspector general investigations normally involve allegations of wrongdoing by an individual <u>and are authorized by written directives</u>." (Emphasis added.)

Here, the anonymous whistleblower complaint was filed with the FLARNG IG on or around September 28, 2000. The FLARNG IG forwarded the complaint to the DAIG on September 28, 2000. On or around October 3, 2000, the Army removed COL Appleby's name from the list of officers submitted to the Senate for confirmation of promotion to Brigadier General. Defendant concedes that the only Directive for Investigation in this case was issued by General Keane on

January 31, 2001, some 120 days <u>after</u> the Army removed COL Appleby's name from the list of officers to be submitted to the Senate for confirmation of promotion to Brigadier General.

Because 10 U.S.C. § 14311, ¶ (a)(1)-(c) contemplates an investigation by a military department and does not define the term "investigation," self-evidently the statute defers to the definitions and requirements of the various types of investigations employed by the military departments, and which vary according to the military departments. In this instance, the DAIG accepted the complaint for initial consideration and, on January 31, 2000, an investigation was authorized that satisfied 10 U.S.C. § 14311, ¶ (a)(1)-(c).

As noted in COL Appleby's complaint, AR 20-1 governed the treatment by the DAIG of the initial allegations against COL Appleby and the investigation ordered by General Keane four months later on January 31, 2001. A review of AR 20-1 demonstrates unequivocally that COL Appleby was not under investigation at the time he was removed from the list of officers to be submitted to the Senate for confirmation of promotion to Brigadier General.

Army Regulation 20-1, "Inspector General Activities and Procedures," outlines the process for handling an anonymous IG complaint such as that made against COL Appleby. According to Chapter 4, Paragraph 4-1, "Inspectors general will use the Inspector General Action Process (IGAP) outlined below in receiving and resolving IGARs [Inspector General Action Requests]."

Paragraph 4-2(g)(4) provides that where the complaint is received through the Department of Defense Inspector General ("DODIG") Hotline, as occurred here, "[t]he coordinator refers DOD Hotline cases to field IG offices for appropriate action and reply...." Once the proper IG office has received the complaint, the Inspector General Preliminary Analysis ("IGPA") process is employed to determine the correct disposition of the case.

Paragraph 4-3(c) then provides that "[a]n IG is usually in IGPA until a course of action is selected for a particular issue or allegation, but in the course of obtaining facts, additional issues may result in further IGPA concurrent with other IGPA procedures pertaining to the original IGAR." (Emphasis added.) During the IGPA, the IG is directed to identify allegations and issues and determine the appropriateness of the complaint for IG action. Once the analysis is completed, and the IG determines that a formal IG investigation is warranted, the IG must then obtain a directive for investigation from the Vice Chief of Staff. If the IG determines that an Investigative Inquiry is sufficient to address the matter, no Directive for Investigation is required.

Army Regulation 20-1 of 15 March 1994, Glossary, Section I, defines an Investigative Inquiry as "[a]n informal fact finding process by IGs to gather information needed to respond to a requester (assistance function), or resolve allegations or issues when investigative techniques are appropriate (investigative function), but circumstances do not merit conduct of an IG investigation."

In this case, the DAIG ultimately determined that an IG investigation was required, and sought and obtained a Directive for Investigation. As noted, on January 31, 2001, General Keane issued the Directive for investigation, formally initiating investigative action against COL Appleby.

Only on January 31, 2001, then, were the statutory criteria for COL Appleby's removal from the list of officers to be submitted to the Senate for confirmation of promotion to Brigadier General satisfied. There simply was no investigation being conducted to determine whether disciplinary action of any kind should be brought against COL Appleby at the time of his removal from the list of officers to be submitted to the Senate for confirmation of promotion to Brigadier General. COL Appleby's removal from the list of officers to be submitted to the Senate on October 3, 2000 for confirmation of promotion to Brigadier General therefore was unlawful.

22

The ABCMR did not specifically address COL Appleby's argument on this point in its decision, and its reasoning cannot reasonably be discerned from its decision. The ABCMR appears to have been concerned with this argument when it stated, "[a]lthough the complaint that was received at the time the appellant was scheduled for Senate confirmation for promotion to the rank of BG was subsequently determined to be unfounded for reprisal, the investigation uncovered additional information that would be expected to be made available for Senate confirmation regardless of how serious or unimportant the applicant may deem it. Accordingly, his name was properly withdrawn until such time as the investigation was finalized."

If the ABCMR were addressing COL Appleby's clear and compelling argument on this point, its response is illogical, arbitrary, capricious, not supported by substantial evidence, and contrary to law. AR 20-1 is unequivocal in its definition and explication of what constitutes an IG investigation. An IG investigation commences only when a Directive for Investigation is issued. At the time COL Appleby was removed from the list of officers to be submitted to the Senate for confirmation of promotion to Brigadier General, there was not a Directive for Investigation, and COL Appleby was not being investigated to determine whether disciplinary action was to be brought against him. That did not occur until January 31, 2000.

COL Appleby's argument did not require the ABCMR to do anything it was not lawfully bound to do. It did not require the board to engage in statutory or constitutional interpretation. It did not require the board to create "new law." It merely required the board to review AR 20-1 and 10 U.S.C. § 14311, determine whether the regulatory and statutory requirements for an investigation were satisfied, and decide accordingly. Nowhere in its decision memorandum does the ABCMR consider this argument. The ABCMR's decision therefore was arbitrary, capricious, not supported by substantial evidence, and plainly contrary to law. Judgment must be entered in

23

favor of COL Appleby.

### 3. The Army Violated 10 U.S.C. § 14311 and AR 600-8-29 By Failing to Obtain Secretary of the Army Approval for Delaying COL Appleby's Promotion Beyond the Authorized Six-month Period

In his application to the ABCMR, COL Appleby presented evidence that the Army unlawfully delayed his promotion beyond the statutorily authorized six-month limit. COL Appleby demonstrated his promotion was delayed on or around October 3, 2000, and that no subsequent authorization for delay was issued at the six-month point. The ABCMR did not address this non-frivolous argument in its Discussion and Conclusions, and merely noted COL Appleby's argument in its recitation of the evidence of the case. The ABCMR's decision therefore was arbitrary and capricious, and the entry of judgment in favor of COL Appleby is required.

10 U.S.C. § 14311(d) provides that "[t]he appointment of an officer to a higher grade may not be delayed...for more than six months after the date on which the officer otherwise would have been promoted unless the Secretary concerned specifies a further period of delay." (Emphasis added.)  Army Regulation 600-8-29, Paragraph 1-20(b) similarly provides that "[a]n officer's promotion will not be delayed more than 6 months unless the SA or the Secretary's designee grants a further delay."  (Emphasis added.)

Defendant argues that the ABCMR's decision was not arbitrary and capricious, relying on an advisory opinion obtained by the board for this case. Defendant suggests that the advisory opinion is correct in asserting that the Secretary of Defense's alleged request that Congress withhold COL Appleby's promotion until the investigation was complete satisfies the reauthorization requirement of 10 U.S.C. § 14311(d).  Def.'s Memo. at 18.  This argument is specious and contrary to the unambiguous language of 10 U.S.C. § 14311(d). The statute

specifically requires a reauthorization by the Secretary of the Army to delay a promotion beyond six months. To argue, as Defendant does, that a reauthorization required by statute after six months can be satisfied by the original authorization renders the statute meaningless.

As COL Appleby argued in rebuttal to the advisory opinion, the Secretary of Defense is not authorized to delay an officer's promotion. COL Appleby has not identified any statute or regulation conferring such authority on the Secretary of Defense. Congress delegated that authority only to the secretaries of the individual military departments. 10 U.S.C. § 14311(d) plainly authorizes only the "Secretary concerned," *i.e.* the secretary of the particular military department. The language of the statute is unambiguous and requires no interpretation.

Defendant's argument that the Army did not delay COL Appleby's promotion is equally specious and contrary to the findings of the ABCMR. According to the board, "[o]n 6 October 200, the applicant was notified by the Deputy DAIG (a major general) telephonically that a reprisal complaint had been filed against him only hours before his promotion was to be confirmed and that based on the complaint, his name was withheld by the Army from the list of officers whose promotions were confirmed by the Senate in October 2000." Admin. Rec. at 156, ¶ 9.

The foregoing finding of the ABCMR undermines Defendant's argument that the Army did not remove COL Appleby from the list of officers whose promotions were to be confirmed by the Senate and that the Secretary of the Army therefore was not responsible for authorizing a delay beyond the initial six-month period. The finding likewise undermines any rationale that might be conceived of to establish a rationale connection between the evidence presented and the ABCMR's final decision.

The ABCMR's decision was arbitrary, capricious, not support by substantial evidence,

and plainly contrary to law. Judgment therefore must be entered in favor of COL Appleby.

**4. The DAIG Lacked Jurisdiction to Investigate the "Whistleblower Complaint"**

As COL Appleby argued before the ABCMR, the DAIG had no jurisdiction to investigate CPT Ward's "whistleblower reprisal" complaint because the complaint did not satisfy the criteria established by federal statute and Army regulations. The ABCMR did not address COL Appleby's arguments in its Discussion and Conclusions, and merely recited COL Appleby's claim in its statement of the evidence. The ABCMR's failure to consider this non-frivolous claim renders its decision arbitrary and capricious.

The Military Whistleblower Protection Act, 10 U.S.C. § 1034, ¶(b)(1)(b)(1)(A) through (B), provide that "[n]o person may take (or threaten to take) an unfavorable personnel action, or withhold (or threaten to withhold) a favorable personnel action, as a reprisal against a member of the armed forces for making or preparing—(A) a communication to a Member of Congress or an Inspector General that (under subsection (a)) may not be restricted; or (B) a communication that is described in subsection (c)(2) and that is made (or prepared to be made) to—(i) a Member of Congress; (ii) an Inspector General (as defined in subsection (i)) or any other Inspector General appointed under the Inspector General Act of 1978 [5 USCS Appx.]; (iii) a member of a Department of Defense audit, inspection, investigation, or law enforcement organization; (iv) any person or organization in the chain of command; or (v) any other person or organization designated pursuant to regulations or other established administrative procedures for such communications.

10 U.S.C. § 1034, ¶(c)(3)(E)(4) further provides that "[n]either an initial determination under paragraph (3)(A) nor an investigation under paragraph (3)(D) is required in the case of an allegation made more than 60 days after the date on which the member becomes aware of the

personnel action that is the subject of the allegation." This paragraph allows the military departments discretion in determining whether they shall accept complaints filed more than 60 days after the alleged reprisal occurs.

Army Regulation 20-1, Chapter 6-6(i), provides that "the IG, DOD is required to investigate allegations of individuals taking (or threatening to take) unfavorable personnel actions or withholding (or threatening to withhold) favorable personnel actions as reprisal against a member of the Armed Forces for communicating with an MC [Member of Congress] or a member of an audit, inspection, investigation or law enforcement organization within DOD." (Emphasis added.) Paragraph 6-6(i)(1) further provides that when such complaints are made "within 60 days of learning of the reprisal, military whistleblower legislation applies." (Emphasis added.)

The DAIG Report of Investigation ("ROI") states that "[o]n 28 September 2000, the Department of the Army Inspector General Agency (DAIG) received a memorandum from the IG, FLARNG, dated 28 September 2000, referring a Title 10, United States Code (USC) Section 1034 complaint (Military Whistleblower Protection)." The alleged reprisal that provided the basis for the DAIG complaint took place on January 26, 2000, when the complainant, CPT Ward, was removed from his command for cause by LTC Bacon, not COL Appleby.

CPT Ward, however, did not file a "whistleblower" complaint as defined by 10 U.S.C. § 1034 and Army Regulation 20-1 because he waited eight months before making his complaint. AR 20-1, Paragraph 6-6(i)(1), makes clear that the provisions of 10 U.S.C. § 1034 only apply where a complaint is made within 60 days of the alleged reprisal.

Further, the evidence of record unequivocally demonstrates that LTC Bacon did not relieve CPT Ward from his command based on any protected communications. He made his

decision based on the findings of an informal AR 15-6 investigation ordered by COL Appleby that determined CPT Ward had committed misconduct warranting his relief from command. Particularly, the investigation found that CPT Ward had abused soldiers in front of other soldiers and threatened one soldier. The AR 15-6 ROI underwent legal review by a Staff Judge Advocate, an Inspector General, and COL Appleby's Administrative Officer, and was found by all to be sufficient and the actions taken appropriate. A subsequent review conducted by BG Jim Watson, Assistant Adjutant General, FLARNG, and the FNG SJA also determined that LTC Bacon was justified in his removal of CPT Ward.

The prejudice to COL Appleby resulting from the negligence of the FLARNG IG and the DAIG was grave. Had the FLARNG IG and the DAIG properly analyzed CPT Ward's complaint, it would have determined immediately that it did not satisfy the criteria for a whistleblower reprisal complaint and no further inquiry would have been required. Had that occurred, COL Appleby's promotion may not have been delayed, and if delayed, the delay likely would have been brief, and his name would have been restored to the promotion list in short order. It should be recalled here that the Directive for Investigation into the allegations against COL Appleby was not issued until January 31, 2001, more than one year after CPT Ward was relieved from his command, and some four months after CPT Ward filed his whistleblower reprisal allegations.

Defendant's response to COL Appleby's complaint is limited to the assertion that the "Army's ability to investigate a senior officer accused of wrongdoing is not limited by the actions of the complaining witness." Def.'s Memo. at 11. Defendant provides no legal authority for that conclusion. Defendant also extracts from the ABCMR decision memorandum a lengthy statement of AR 20-1. *Id.*, at 12. The ABCMR quote, however, does not address COL

28

Appleby's argument here. It is, rather, responsive to COL Appleby's claim that the Military Whistleblower Act does not apply to state national guardsmen acting in their Title 32 state capacity.

The foregoing demonstrates that the ABCMR's decision was arbitrary, capricious, not supported by substantial evidence, and contrary to law. Judgment must be entered in favor of COL Appleby.

### 5. The DAIG Lacked Jurisdiction Over the Whistleblower Complaint Because CPT Ward Failed to Exhaust Available Remedies

COL Appleby presented evidence to the ABCMR that IG consideration of the complaint was improper because CPT Ward failed to exhaust available remedies. This was especially true because CPT Ward's complaint was filed beyond the 60 day limitation period established by AR 20-1, and therefore the provisions of 10 U.S.C. § 1034 were inapplicable. The ABCMR did not address COL Appleby's arguments in its Discussion and Conclusions, and merely recited his allegations in its decision memorandum. The ABCMR's failure to consider COL Appleby's non-frivolous argument, or provide evidence that it considered COL Appleby's arguments yet rejected them for particular reasons, renders its decision arbitrary and capricious.

Army Regulation 20-1 of 15 March 1994, ¶ 6-7(a), provides that "there are many situations for which law or regulation provide soldiers a remedy or means of redress. Soldiers must seek the remedy or redress before an IG can provide assistance. Once the soldier has used the available redress procedures, IG assistance is limited to a review of the situation to determine if the soldier was afforded due process provided by law or regulation." (Emphasis added.)

Paragraph 6-7(b) provides that "[e]xamples of situations where "specific redress, remedy, or appeals procedures are applicable include the following: … (8) complaints that a soldiers has

been wronged by the commanding officer. (See UCMJ, Art. 138, and AR 27-10.) Referral to a military lawyer for advice and assistance normally is appropriate. … (10) Relief for cause. (See AR 600-20, AR 623-105, and AR 623-205). …(11) Adverse information filed in personnel records. (See AR 600-37.)"

LTC Bacon relieved CPT Ward from his command, a relief for cause action. CPT Ward also believed that he had been wronged by COL Appleby. Thus, according to AR 20-1, the FLARNG IG and the DAIG, in addition to rejecting the complaint for failure to meet the criteria for a whistleblower reprisal complaint, should have rejected his complaint for failure to exhaust available remedies.

The clear intention of the foregoing provisions is to ensure that soldiers raise whistleblower reprisal claims in a timely manner so as not to prejudice the accused individuals. Another clear intention is to ensure that soldiers first attempt to resolve their concerns at the lowest possible level and through their chain-of-command. The IG system is not designed to handle every complaint made by a soldier against a commander. If the IG system allowed itself to be clearinghouse for soldier complaints, it would grind to a halt due to the sheer volume of complaints it would receive. It also would result in undue intrusion and interference with commanders and the day-to-day operation of their commands.

The Army must be presumed to be familiar with and understand its own regulations. It unquestionably is bound to follow them. The Army's failure to require CPT Ward to exhaust available remedies, and do so in a timely manner, resulted in severe prejudice to COL Appleby. If the Army had followed its own regulations, COL Appleby's promotion would not have been delayed, and if delayed, the period of delay would have been very short. COL Appleby thus would have restored to the promotion list for confirmation by the Senate.

Defendant's response to COL Appleby's complaint again is limited to the assertion that the "Army's ability to investigate a senior officer accused of wrongdoing is not limited by the actions of the complaining witness." Def.'s Memo. at 11. Defendant then extracts from the ABCMR decision memorandum a lengthy statement of AR 20-1. *Id*., at 12. The ABCMR quote, however, does not address COL Appleby's argument here. It is, rather, responsive to COL Appleby's claim that the Military Whistleblower Act does not apply to state national guardsmen acting in their Title 32 state capacity. Defendant's argument therefore is unfounded and erroneous. He points to no authority authorizing IG investigative activities apart from those established in AR 20-1.

The evidence presented by COL Appleby to the ABCMR demonstrating the lack of DAIG legal jurisdiction exceeded the preponderance standard. The ABCMR's failure to specifically address COL Appleby's claim, as with each other claim, and state why the evidence supporting the claim was found insufficient or rejected, was inconsistent with its legal obligation to give full and fair consideration to COL Appleby's application. Judgment therefore must be entered in favor of COL Appleby.

**6. The DAIG Erroneously Concluded that the Letters of Concern Issued by COL Appleby Were "Letters of Reprimand" and Constituted Threats Against the Affected Officers.**

The DAIG concluded that COL Appleby issued letters of reprimand as threats against two subordinate officers who were found, after an AR 15-6 investigation, to have engaged in improper conduct. Effectively, these findings served as the basis for COL Appleby's non-promotion to Brigadier General and his eventual retirement from the FLARNG. As COL Appleby demonstrated to the ABCMR, the DAIG's findings are patently erroneous. COL Appleby presented non-frivolous, cogent argument of the DAIG's various errors and supported

31

his argumentation with documentary evidence.

In its Discussion and Conclusions, the ABCMR merely stated, "[a]lthough the applicant does not agree with the findings of the IG, there were substantiated findings that would have required another look by a PRB process to determine if his name should be resubmitted for confirmation by the Senate. The PRB process is not a short process and is one that requires several months to accomplish. Accordingly, once he had met his maximum years of service and was transferred to the retired reserve, he was no longer eligible to be considered for promotion." This conclusion is patently false, as demonstrated in Count 7, below.

The DAIG's findings of misconduct by COL Appleby are illogical and specious. As was clearly delineated in his application to the ABCMR, COL Appleby issued the Letters of Concern to the two officers for substandard leadership and management, based on two separate AR 15-6 investigations that were carefully reviewed for legal sufficiency and approved by COL Appleby's SJA. Two SJAs and COL Appleby's rating officer reviewed the facts on which the LOCs were based and the language of the LOCs, and approved the letters as being appropriate.

AR 600-37 governs the use of "Unfavorable Information" pertaining to the character, integrity, trustworthiness, or reliability of military soldiers. This regulation permits the filing of unfavorable information in a soldier's OMPF under specified conditions. Such action is considered to be adverse personnel action and requires that certain procedural rights be afforded the affected soldier.

Paragraph 3-4(b) establishes the procedural rights the Army must afford a soldier where a commander intends to file unfavorable information in the soldier's OMPF. Those rights are: (1) written notification of intention to file; (2) documentary evidence upon which the proposed filing is based; (3) the right to submit a written response to the proposed filing with supporting

evidence; and (4) the right to consideration of the written statement and supporting evidence by the officer proposing to file.

Where a commander does not file such unfavorable information in a soldier's OMPF or MPRJ, no specific procedural protections are afforded the soldier, as no adverse personnel action is considered taken. Paragraph 3-4 (a)(4) does permit the affected soldier to submit a written statement to be attached to the letter where filed in the MPRJ. The LOCs issued by COL Appleby were not official reprimands and were not placed in the officers' OMPFs. The officers therefore had no right to consideration by COL Appleby of any written submission they might have chosen to make.

COL Appleby did not direct the filing of the LOCs in the officers' official personnel records; he specifically directed that they not be filed in the officers' official personnel records. COL Appleby therefore did not take adverse action against the officers. COL Appleby therefore could not have taken adverse action against the officers for their protected communications.

The LOCs provided the sole basis for the DAIG's conclusion that COL Appleby reprised against officers for making protected communications. The DAIG's use of the term "Letter of Reprimand" was incorrect and improper. The foundation for the DAIG's conclusion that the letters constituted LORs was based on its reading of the text of the letters themselves.

The DAIG noted that COL Appleby stated in his LOC to MAJ Hulen that:

> [w]hile this is <u>not an official letter of reprimand</u>, it is, in fact, a reprimand of you as an officer of the United States Army and the FLARNG. I can assure you that any further activities, particularly those that raise questions about your integrity or personnel management skills, and which I perceive to be in violation of this letter or a continuance of your previous conduct shall result in further swift and appropriate action by this CDR.

The DAIG further noted that in COL Appleby's LOC to LTC Bacon, he similarly stated

that "[t]his letter is <u>not intended as an official letter of reprimand</u>. A copy <u>will not</u> be included in your personnel file <u>unless</u> you continue to improperly supervise your staff and they do not follow proper leadership standards." (Emphasis added.) No further action was taken against the officers, who continued to perform their duties.

As regards the LOC to MAJ Hulen, the DAIG noted that "[t]he processing of the letter was procedurally correct; however, it was considered unfair and unreasonable." The DAIG concluded in regard to LTC Bacon's LOC that "[t]he word 'unless' established that the letter had the potential filing as an official LOR. The processing of the letter was procedurally incorrect." The DAIG considered the term "unless" to require COL Appleby to afford the officer the procedural rights granted by AR 600-37, ¶ 3-4. The DAIG admitted, however, that the letters "debatably might not meet the LOR ["Letter of Reprimand'] standards of Army Regulation 600-37, however, COL Appleby did state it was a reprimand." Admin. Rec. at 392.

As COL Appleby argued before the ABCMR, because the LOCs were not filed in the officers' OMPFs, they could not and did not constitute "Letters of Reprimand" or adverse actions, and the procedural protections afforded by AR 600-37 were inapplicable. Again, the evidence demonstrates that COL Appleby clearly stated that the letters did not constitute official letters of reprimand and would not be placed in the officers' OMPFs. The letters were not placed in their OMPFs, and no adverse action was taken against the officers. Neither of the officers complained about the letters (certainly a requirement for a valid reprisal complaint), and both continued to serve in the FLARNG under COL Appleby's command. Those facts are more than sufficient to prove that the DAIG incorrectly construed the letters as adverse actions taken in reprisal for the officers' making alleged protected communications.

The DAIG's interpretation of COL Appleby's actions, and the ABCMR's endorsement of

that interpretation, have profound implications for a commander's ability to discipline his or her subordinates and maintain proper morale and order. Can a commander not counsel his or her subordinates for substandard performance?

COL Appleby's actions were absolutely necessary for establishing his authority as commander, for enforcing proper standards of conduct, and for setting the example for all soldiers under his command to follow. They were entirely appropriate actions of a commander who was addressing morale and discipline issues within his command. His approach to disciplining subordinates clearly was incremental with the granting of ample opportunity for the correction of mistakes.

If the DAIG's interpretation of COL Appleby's actions were applied widely across the Army, the institution would be rendered ineffective. COL Appleby's actions simply were not "threats." They were no more than warnings that further disciplinary action might be incurred if the officers did not correct their behavior. Admin. Rec. at 291-292.  In effect, COL Appleby was denied promotion to Brigadier General because he acted appropriately as a commanding officer in disciplining subordinate officers for substandard performance in a unit that is world-wide deployable on 72 hour notice.

The ABCMR had a legal obligation to consider COL Appleby's arguments that the DAIG's factual findings and conclusions were erroneous, and to grant relief if COL Appleby demonstrated error or injustice by a preponderance of the evidence standard. It did not do so. Its decision therefore was arbitrary and capricious, and judgment must be entered in favor of COL Appleby.

### 7. COL Appleby Was Never In a Non-Promotable Status:
### His Retirement Therefore Was Unlawful

In considering COL Appleby's claims that he was unlawfully retired, the ABCMR concluded that "[n]ot withstanding the favorable advisory opinions obtained from the NGB which opine that applicant's nomination should have then and should be now forwarded to the Senate for consideration for confirmation, by the time the investigation was completed and his nomination/records could have been reviewed by a PRB, he would have reached his maximum years of service and the result would have been the same even if it had been submitted the day the investigation was completed." Admin. Rec. at 14, ¶ 11.

The ABCMR's position is patently incorrect, and argued in detail below. Moreover, if its reasoning is allowed to stand, it creates gross injustice for any officer subjected to unsubstantiated claims immediately before his promotion confirmation. So long as the unsubstantiated claims are outstanding at the time the affected officer would otherwise reach his maximum years of service, he or she would be automatically retired with no right to redress.

The ABCMR has very broad authority to correct an error or injustice when warranted by the evidence. It can order reinstatement of a servicemember and back pay. *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C. Cir. 1977). "[T]he Army's Correction Board is, as the district court properly characterized it, 'a vital part of the promotion apparatus established by Congress.'" *Id.* The board also has the power to order retroactive promotion and back pay. *Chappell v. Wallace*, 462 U.S. 296, 303 (1983).

The ABCMR's authority included reinstating COL Appleby to military duty, directing that his name be returned to the Senate for confirmation consideration, or referral to a PRB. The Board's decision in this respect was arbitrary, capricious, not supported by substantial evidence,

36

contrary to law, and made in bad faith Judgment therefore must be entered in favor of COL Appleby.

10 U.S.C. § 14507(b) addresses the removal of officers from a promotion list due to completion of 30 years of service. "Colonels and Navy captains. Unless continued on the reserve active-status list under section 14701 or 14702 of this title …or retained as provided in section 12646 or 12686 of this title …, each reserve officer of the Army, Air Force, or Marine Corps who holds the grade of colonel, and each reserve officer of the Navy who holds the grade of captain, <u>and who is not on a list of officers recommended for promotion to the next higher grade</u> shall … be removed from that list under section 14514 of this title … on the first day of the month after the month in which the officer completes 30 years of commissioned service. This subsection does not apply to the adjutant general or assistant adjutants general of a State." (Emphasis added.)

The evidence of record demonstrates that COL Appleby's name was never removed from the promotion list, an action assigned to the President of the United States. 10 U.S.C. § 14310. *See also* Admin. Rec. at 156, ¶ 9 (COL Appleby's "name was withheld by the Army from the list of officers whose promotions were confirmed by the Senate in October 2000.") Because COL Appleby's promotion was unlawfully delayed and the Army in several instances violated COL Appleby's right to due process of law, he remained in a promotable status throughout. COL Appleby therefore was not subject to the mandatory removal provisions of 10 U.S.C. § 14507(b).

The ABCMR also concluded that "[t]he DAIG investigation of Plaintiff revealed adverse information that warranted a review by a Promotion Review Board before a determination of suitability could be made." The ABCMR indicates that PRB consideration of COL Appleby would have been mandatory. The ABCMR, however, provided no evidence in support of that

contention.

PRB's are governed by AR 600-8-24. Paragraph 8-2(b) provides as follows: "*b.* An officer <u>may be referred</u> to a PRB for the following reasons (the list is not exclusive): (1) A referred OER or AER. (2) Punishment under Article 15, Uniform Code of Military Justice (whether filed in the restricted or performance fiche of the OMPF). (3) Any court-martial conviction. (4) A memorandum of Reprimand placed in the OMPF. (5) Adverse documentation filed in the OMPF. (6) Initiation of elimination action under the provisions of AR 600–8–24. (7) Failure to make satisfactory progress in a weight control program. (See AR 600–9.) (8) Other derogatory information received by HQDA [Headquarters, Department of the Army] but not filed in the OMPF, if the referral authority finds that the information is substantiated, relevant, and might reasonably and materially affect a promotion recommendation. (See para 8–4.)" (Emphasis added.)

These provisions demonstrate that the ABCMR's conclusion was erroneous. Referral of COL Appleby to a PRB was not mandatory. The ABCMR solicited an advisory opinion from the NGB, which recommended that COL Appleby's name be restored to the promotion list and returned to the Senate for confirmation and, if confirmed that he be awarded a date of rank of October 6, 2000, the date on which he otherwise would have been promoted. The NGB's recommendation clearly demonstrates that it believed PRB consideration was unnecessary. This conclusion finds further support in the facts that based on the DAIG investigation, COL Appleby received only a memorandum of concern, and the memorandum was not placed in his OMPF.

Defendant concedes that COL Appleby would not have been retired if he were on the list for promotion to Brigadier General.  Def.'s Memo. at 19.  As noted above, the evidence of record demonstrates that the President did not remove COL Appleby's name from the promotion list,

and in fact his name remained on the promotion list until he was erroneously retired.

The ABCMR enjoyed full access to HQDA officials and the applicable statutes and regulations. Its failure to grant COL Appleby relief on this claim was arbitrary, capricious, not supported by substantial evidence, and plainly contrary to law. Judgment therefore must be entered in COL Appleby's favor.

## **CONCLUSION**

The foregoing demonstrates that COL Appleby satisfied his burden of proof before the ABCMR in demonstrating the existence of error and injustice warranting the correction of his records. The ABCMR's decision was arbitrary, capricious, not supported by substantial evidence, and contrary to law. This Court should deny Defendant's motions and grant COL Appleby's cross-motion for summary judgment.


Respectfully submitted,

/s/

Raymond J. Toney (NY0066)
The Law Office of Raymond J. Toney
34-16 30th Avenue, Third Floor
Astoria, NY 11103
Tel: 718-726-3656
Fax: 718-459-0476
E-mail: rjtoney@rjtlaw.net