UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES C. APPLEBY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE HONORABLE FRANCIS HARVEY, )<br>SECRETARY OF THE ARMY, )<br>)<br>Defendant. )<br>_____) | Civil Action No. 06-0193 (RBW) |

**CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, IN PART, AND <u>FOR SUMMARY JUDGMENT</u>**

Defendant respectfully submits this Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply Memorandum in Support of Defendant's Motion to Dismiss, in part, and for Summary Judgment. Plaintiff's consolidated opposition and cross-motion[1] for summary judgment repeats in great detail the allegations made to and rejected by the ABCMR. Essentially, plaintiff argues in his Opposition and Cross Motion that the ABCMR completely failed to analyze any of the evidence properly and concluded every aspect of the matter incorrectly.

None of plaintiff's arguments, however, establish that the ABCMR's decision was arbitrary or capricious. Plaintiff's attempt to convince this Court to substitute its judgment for that of the ABCMR's is without support or justification. Plaintiff's claims either fail to state a claim upon which relief can be granted or require summary judgment in favor of the defendant. For the reasons set forth in defendant's submitted dispositive motion, and for the below reasons,

---

[1] Hereinafter referenced as "plaintiff's motion" or "Opposition and Cross Motion" and cited as P.M., p -.

defendant's motion should be granted and plaintiff's cross motion denied.  In the event that the Court finds any of plaintiff's arguments meritorious, the proper disposition is for the Court to remand the case to the ABCMR, not to substitute its judgment for that of the ABCMR's.

### I.  ARGUMENT

A.  **The ABCMR Decision Was Not Arbitrary or Capricious**

Under the Administrative Procedures Act (APA), the Court will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  In reviewing an agency's action under the APA standard, the Court is limited to reviewing the administrative record that was in front of the agency when it made its decision, Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985), and it "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  MD Pharmaceutical, Inc. v. Drug Enforcement Administration, 133 F.3d 8, 16 (D.C. Cir. 1998) (*quoting* Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge.  The plaintiff has the burden of showing by cogent and clearly convincing evidence that the challenged decision was the result of a material legal error or injustice."  *See* Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994).  Indeed, review of a military correction board's decision is limited to deciding "whether the Board's decision making process was deficient, not whether the decision was correct."  Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1011 n. 16 (8th Cir. 1989), citing Kreis v. Secretary of the Air Force, 866 F.2d 1508 (D.C. Cir. 1989).

Even if reasonable minds might reach differing conclusions, the court is not empowered to substitute its judgment for that of the agency. U.S.P.S. v. Gregory, 534 U.S. 1, 11 (2001). Moreover, military officials are presumed to "discharge their duties correctly, lawfully, and in good faith." Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir 1997) (quoting Sanders v. United States, 594 F.2d 804, 813 (Cl. Ct. 1979)). "[D]ecisions of the Board are reviewable under the APA, albeit by an unusually deferential application of the "arbitrary or capricious" standard...." Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Consequently, "perhaps only the most egregious decisions may be prevented under such a deferential standard of review." Id. at 1515.

> This standard of deference requires a court to defer to an agency's interpretation of a rule even when that interpretation diverges from what a first-time reader might conclude was the "best" interpretation of the regulation. Even when a plaintiff offers a more plausible interpretation of a regulation, it is the "agency's choice [that] receives substantial deference." Thus, if the Army's interpretation of its regulations is a plausible interpretation of the plain language of those regulations, then this Court will defer to the ABCMR's decision.

Fontana v. Caldera, 160 F. Supp. 2d 122, 129-130 (D.D.C. 2001) (internal citations omitted).

In the instant case, the ABCMR considered all of the evidence and arguments advanced by the plaintiff and, in a well reasoned and logical opinion, determined that the plaintiff was not entitled to relief. Plaintiff's dissatisfaction with the result does not render the decision arbitrary or capricious.

Congress has entrusted the primary duty of correcting military records with the military correction boards. Harris v. United States, 14 Cl. Ct. 84, 89 (1987); Sanders v. United States, 594 F.2d 804, 813-14, 219 Cl. Ct. 285, 302 (1979); 10 U.S.C. § 1552. When a plaintiff seeks to overturn the final decision of a military correction board, the court has a very limited scope of review. Judicial review is limited to determining whether there has been substantial compliance

with statutes and regulations, whether the agency acted arbitrarily and capriciously, and whether there is substantial evidence to support the agency's decision. Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987); Dilley v. Alexander, 603 F.2d 914, 919-20 (D.C. Cir. 1979). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).

The administrative record in this case fully supports the ABCMR's decision to deny the plaintiff the relief he seeks. "[T]he function of this Court is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998). Unless the board's determination is demonstrably arbitrary, capricious, or unsupported by substantial evidence, a court should not interfere with its decision. The ABCMR's action is not arbitrary and capricious when the Board, as in this case, gives careful consideration to an application. Johnson v. United States, 138 Ct. Cl. 81, 85, cert. denied, 355 U.S. 850 (1957); Yongue v. United States, 9 Cl. Ct. 635, 639 (1986). "[I]f the record contains such evidence that a reasonable mind might accept, the court must accept the board's findings." Smith v. Dalton, 927 F. Supp. 1, 5 (D.D.C. 1996)(internal citation omitted). Thus, plaintiff's request that this Court simply disregard the ABCMR's decision and substitute its judgment for the Board's, notwithstanding the detailed and reasoned opinion rendered by the ABCMR, is contrary to this Court's practice.

———

**B. The Senate's Delay in Considering the Plaintiff's Nomination Did Not Violate Any Due Process Rights of the Plaintiff**

The plaintiff's continued reliance on AR 600-8-29 is misplaced. AR 600-8-29 only applies to officers on the active duty list. A.R. 029; AR 600-8-29. As a national guard officer, the plaintiff was not on the active duty list. Any purported procedural safeguards established by AR 600-8-29 are irrelevant to this case. The relevant inquiry centers around Department of Defense Instruction (DODI) 1320.4. As set out in the supporting documents obtained by the ABCMR to ensure a fully informed decision, the Army notified the Secretary of Defense pursuant to DODI 1320.4, ¶ 6.2.1.6 of the allegation against the plaintiff. A.R. 031. The Secretary of Defense, pursuant to DODI 1320.4, ¶¶ 6.2.1.6 and 6.2.1.7, requested that the Senate Armed Services Committee defer consideration of the plaintiff's nomination until the investigation was complete and a determination of suitability was made. Id.; A.R. 158. The Senate did not confirm the plaintiff for promotion to Brigadier General. Neither 10 U.S.C. § 14311 nor the Army can compel the Senate to take action on a nomination. Nor does 10 U.S.C. § 14311 proscribe who may ask the Senate to delay action. There is no requirement, as alleged by the plaintiff, that the approval of a delay past six months be given at any specific time in the delay process. The statute does not establish a required time for such a determination nor prohibit that determination being made at the beginning of the delay. 10 U.S.C. § 14311.

DODI 1320.4 contains guidance for the steps to take upon completion of an investigation with substantiated allegations. DODI 1320.4, ¶ 6.2.1.8. The plaintiff's retirement from the National Guard soon after the completion of the investigation, precluded this process from taking place.

> Under the provisions of 10 USC, Section 14317(a), upon an officer's transfer to
> an inactive or retired status, he shall be treated as if he had not been considered for

5

>promotion by a General Officer Federal Recognition Board, and he may not be placed on a promotion list or promoted to the higher grade. Accordingly, COL Appleby's nomination was appropriately withdrawn from the Senate.

A.R. 031. Had the plaintiff not retired, the Secretary of the Army would have reviewed the plaintiff's nomination in light of the substantiated allegations and determined whether or not he still supported the nomination based on the advice of an adverse panel or promotion review board and any response from the plaintiff. A.R. 031-032. The plaintiff retired before this could take place and so was removed from the process by operation of 10 U.S.C. § 14317(a).

The ABCMR addressed the plaintiff's assertions of error in this regard. The ABCMR concluded that "[t]he applicant's contention that his promotion was unjustly and illegally withheld from Senate confirmation has been noted and found to be without merit." A.R. 161. This conclusion is not arbitrary, capricious, or contrary to law. The ABCMR received and considered supporting documents that establish the reasonableness of this determination. The ABCMR provided these supporting documents to the plaintiff and considered the plaintiff's responses in formulating its decision.

The ABCMR also explicitly addressed the plaintiff's claim regarding the alleged lack of written notification. The ABCMR determined that notwithstanding the insufficient evidence to conclude that there was not written notice to the plaintiff, the plaintiff did not establish that any harm had resulted from the acknowledged telephonic notification. A.R. 162. Given that the Senate delayed consideration of the plaintiff's nomination, and that the Army could not go forward without Senate approval, there certainly was no showing of harm caused by the Army by virtue of the form of notice.

Both Plaintiff's claims regarding written notification and allegedly deficient notification are based on 10 U.S.C. § 14311. However, both 10 U.S.C § 14311(a) (delay in promotion) and

(c) (notice of delay) address delays in appointment.  Appointment is an action taken by or on behalf of the President after a nomination has received the advice and consent of the Senate.  As the Federal Circuit discussed in <u>Dysart v. United States</u>:

> The Constitution provides that the President has the authority to nominate and, "by and with the Advice and Consent of the Senate," to appoint "Officers of the United States." U.S. Const. art. II, § 2, cl. 2. Three separate actions are ordinarily required for a person to be appointed to office pursuant to this provision: the President's nomination, confirmation by the Senate, and the President's appointment after Senate confirmation. See <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 155-56, 2 L. Ed. 60 (1803).

369 F.3d 1303,1306 (Fed. Cir. 2004).  As plaintiff was never eligible for an appointment, by virtue of not being confirmed by the Senate, neither the President nor his designee was empowered to appoint the plaintiff.   The action delayed was consideration by the Senate, not appointment.

Even if 10 U.S.C. § 14311 applied to plaintiff, the decision whether or not to afford relief to an applicant is committed to the discretion of the Secretary of the Army and his designee, the ABCMR.  10 U.S.C. § 1552(a)(1).  This discretion encompasses a decision not to grant relief when an error is deemed harmless.  An error without effect does not entitle an applicant to relief.

> It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice,' ... than it is if he is required to act whenever a court determines that certain objective conditions are met, i.e. that there has been an error or injustice. The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice. … All such balancing of considerations is to be done by the Secretary, free of judicial second-guessing.  Such determinations are well within his discretion.

<u>Kreis v. Secretary of the Air Force</u>, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (emphasis in original).

**C. There was Ample Legal Basis for Requesting that Congress Delay Consideration of Plaintiff's Promotion**

The plaintiff was under investigation before his promotion was confirmed by the Senate. Pursuant to DODI 1320.4, the Secretary of Defense requested that the Senate defer consideration of the plaintiff's promotion until the investigation was complete. Plaintiff unpersuasively contends that the investigative inquiry that was being conducted into alleged wrongdoing on his part does not meet the definition of investigation in 10 U.S.C. § 14311. Plaintiff concedes that the DAIG received the allegation of wrongdoing against the plaintiff and was looking into the allegation prior to the request to delay consideration of his nomination.

The majority of the plaintiff's exhaustive citations to AR 20-1 are to a version of AR 20-1 that was not in effect until after the plaintiff retired. The relevant version of AR 20-1 was published March 15, 1994. It does not contain the Chapter 4 that plaintiff references repeatedly to attempt to bolster his argument. The Army is not bound by a regulation that did not exist at the time of the actions in question.

The Army attempted to resolve the allegations against the plaintiff in the quickest, most informal way possible. The plaintiff cannot and should not be allowed to profit at the expense of the Army's good faith. As acknowledged by the plaintiff, AR 20-1 defines an investigative inquiry as:

> An informal fact-finding process followed by IGs to gather information needed to ... resolve allegations or issues when investigative techniques are appropriate (investigation function), but circumstances do not merit conduct of an IG investigation. Typically, investigative inquiries (chap 7) are conducted without a directive; sworn, recorded testimony is not taken; and the ROI format in the Assistance and Investigations Guide is recommended.

AR 20-1, p. 39. ROI is defined in the regulation as Report of Investigation. A.R. 20-1, p. 38. Therefore, at its heart, the plaintiff's argument is that an investigative inquiry into an allegation

8

of misconduct using investigative techniques that produces a report of investigation, cannot be considered an investigation. This argument is illogical and untenable. The DAIG actions fulfilled the statutory requirement that there be an investigation pending and the Army complied with the provisions of DODI 1320.4 in forwarding the request that the Senate not consider the plaintiff's nomination.

**D. The Delay in Plaintiff's Promotion was Proper**

Plaintiff's argument that the delay of his promotion past six months was unlawful is based on an erroneous reading of 10 U.S.C. § 14311. The statute states that a promotion "cannot be delayed for more than six months after the date on which the officer would otherwise have been promoted unless the Secretary concerned specifies a further period of delay." 10 U.S.C. § 14311(d). The plaintiff's reading is in error for several reasons. First, the Army did not delay the plaintiff's promotion. Since the plaintiff's nomination was already with the Senate when the allegation arose, the Secretary of Defense requested that the Senate delay consideration of the plaintiff's nomination. A.R. 031. This action was merely a request by the Department of Defense that a coordinate branch of government take a certain action. The Department of Defense could not force the Senate not to take action on the nomination, just as they could not compel the Senate to take or not take any action. Nor could the Army promote the plaintiff without Senate confirmation.

Even if 10 U.S.C. § 14311 applied to plaintiff, his argument that the Secretary of Defense does not have the authority to delay the plaintiff's promotion misses the mark for two reasons. As explained above, it was not the Secretary of Defense who delayed the promotion, it was the Senate. The Secretary of Defense simply asked the Senate not to consider Plaintiff. If this is

construed to be a delay by the Secretary of Army of plaintiff's promotion, it satisfies the requirement of 10 U.S.C. § 14311 that there be Secretarial approval of promotion delays beyond six-months because the Secretary of Defense requested a delay until the investigation was complete. As the immediate superior of the Secretary of the Army, the Secretary of Defense has the authority to approve a promotion delay. In addition, as the immediate superior of the Secretary of the Army, the Secretary of Defense has all of the authority of the Secretary of the Army. See 10 U.S.C. § 101 (the military departments are under the control of the Secretary of Defense); See also 50 USCS § 401(each military department shall be separately organized under its own Secretary and shall function under the direction, authority, and control of the Secretary of Defense). However, contrary to plaintiff's repeated assertions, there is no need to reach this issue as the Secretary of Defense only made a recommendation with respect to the plaintiff's promotion. The decision to delay the consideration of plaintiff's promotion was made by the U.S. Senate.

**E. The Army Inspector General (DAIG) Had the Authority and Jurisdiction to Investigate the Plaintiff**

Plaintiff continues to assert that the DAIG lacked jurisdiction to investigate the Whistleblower Complaint. This argument is grounded on a misunderstanding of the nature of a National Guard officer and a misinterpretation of the Whistleblower Statute. Since every member of a state National Guard is also a member of the Army National Guard of the United States (ARNGUS), the Military Whistleblower protections applied to the plaintiff. See Perpich v. Department of Defense, 496 U.S. 334, 345 (1990). Plaintiff correctly states that 10 U.S.C. § 101 defines "armed forces" as the "Army, Navy, Air Force, Marine Corps, and Coast Guard," but plaintiff does not mention that 10 U.S.C. § 101(c)(3) defines "Army National Guard of the

United States" as "the reserve component of the Army all of whose members are members of the Army National Guard." Given that the ARNGUS is a subset of the Army, members of the ARNGUS fall under the definition of "armed forces" for the purposes of the Military Whistleblower Act, 10 U.S.C. § 1034. Furthermore, the GAO report submitted by plaintiff, and addressed by the ABCMR, does not support his contention that the Military Whistleblower Act is inapplicable. It is clear from the GAO report, particularly when read in light of the <u>Perpich</u> decision, that the only time that National Guard members are not covered by the Federal Whistleblower protections is when they are called into active state service. This was not the situation with the plaintiff who maintained his dual status as a member of the state national guard and the ARNGUS.

  Plaintiff further asserts that since the complaint was received more than 60 days after the alleged reprisal, that the DAIG was precluded from investigating the allegation. The plaintiff's analysis turns the clear language of the statute on its head. The plaintiff wants this Court to interpret "an investigation ... is [not] required in the case of an allegation made more than 60 days after the date ... of the ... the subject of the allegation", 10 U.S.C. § 1034(c)(3)(E)(4), to mean that the Army cannot investigate unless the allegation is made within 60 days. This does not fit the language of the statute. To read the statute as plaintiff proposes would require this court to rewrite the statute to change "nor an investigation ... is required", 10 U.S.C. § 1034 (c)(4), to read "an investigation is prohibited." While Congress did not impose an obligation to investigate allegations brought forward after 60 days, it certainly did not preclude such an investigation.

  Plaintiff's claim that if the DAIG had determined that no investigation "would have been required", his promotion would not have been delayed is pure speculation. The mere fact that an

investigation may not have been required does not get the plaintiff any further toward establishing that the investigation was illegal or prohibited. The Army exercised due caution by inquiring into a serious allegation against an officer who was potentially going to serve as a General Officer. There is nothing illegal or untoward about the Army's desire to make sure that it was not overlooking misconduct. The plaintiff's claim that the ABCMR did not address this argument in its Discussion and Conclusions is misleading. P.M., p. 26. The ABCMR devoted almost an entire page, albeit in the "Consideration of Evidence" portion of its opinion, to the plaintiff's argument that National Guard personnel are not covered by the Military Whistleblower Protections. A.R. p. 160. The ABCMR examined and discussed the evidence submitted by the plaintiff, but correctly determined that since National Guard Officers are members of the ARNGUS, the Whistleblower statute applied to the plaintiff. A.R. 160, 162. This determination is consistent with the law and is in no way arbitrary or capricious.

**F. The Complainant's Alleged Failure to Exhaust Administrative Remedies Did Not Deprive the DAIG of the Authority to Investigate the Allegation Against the Plaintiff**

The plaintiff claims that the complainant did not exhaust his administrative remedies and as a result, the DAIG was prohibited from investigating a serious allegation of misconduct against an officer pending possible promotion to general officer. While the plaintiff correctly quotes Army Regulation 20-1, he neglects to point out that Whistleblower complaints are handled in a separate paragraph of the Regulation. AR 20-1, ¶ 6-6i. The inclusion of a separate paragraph dealing with Whistleblower complaints demonstrates that they are a unique type of allegation subject to unique consideration and treatment. The paragraphs cited by the plaintiff do not establish, as he asserts, that Whistleblower complaints will be ignored unless and until the

complainant has gone through a number of other processes.  This reading undercuts the very purpose of the Whistleblower provisions: to provide quick resolution to such complaints.  In addition, the plaintiff's assertion that the DAIG should have ignored a serious allegation regarding a senior officer when time was of the essence is unconvincing.  The Army had a responsibility to fully investigate the allegation of misconduct and did so.

**G. Plaintiff's Attacks on the DAIG's Conclusions are Mislaid**

As stated above, the Plaintiff is limited to challenging the ABCMR's decision in this Court and cannot attack the underlying decisions that he asked the ABCMR to review.  The DAIG concluded, based on the language of the letters that the plaintiff issued to the two junior officers, that they could be considered adverse actions prohibited by Whistleblower protections.  A.R. 326-329; 385-387.  The plaintiff again fails to properly characterize relevant Army regulations when he states, "because the LOCs were not filed in the officers' OMPFs, they could not and did not constitute "Letters of Reprimand.""  P.M. p. 34.  Whether or not a letter is considered a letter of reprimand does not hinge on whether the letter is filed in a soldier's OMPF (official file) or MPRJ (local file).  See AR 600-37, ¶ 3-4.  The plaintiff's reliance on a misreading of the Regulation to attempt to show that the ABCMR action was arbitrary and capricious is not convincing.  The Florida National Guard Staff Judge Advocate concluded that the letter to MAJ Hulen was an "informal letter of reprimand."  A.R. 320-321.  Perhaps most importantly, the plaintiff himself characterized the letter to MAJ Hulen as a letter of reprimand at least twice.  A.R. 315; 316.

Furthermore, the DAIG substantiated two other allegations against the plaintiff.  A.R.

330; 332-333.  The plaintiff does not discuss or refute these allegations in his complaint or Opposition and Cross-Motion.  Even if the DAIG's conclusions were wrong regarding the nature of the letters the plaintiff issued to his subordinates, which the defendant does not concede, there were still substantiated allegations against the plaintiff that would require review under DODI 1320.4, ¶ 6.2.1.8.

The ABCMR reviewed the DAIG findings and the plaintiff's allegations of error.  The ABCMR determined that the substantiated findings of the DAIG would have required a Promotion Review Board and that the plaintiff retired before such a board was held.  A.R. 15.  This is in line with the supporting documents that the ABCMR obtained stating that the Secretary of the Army would have had to make a determination whether to continue to support the plaintiff's nomination, but before this determination could be made, the plaintiff retired and by operation of 10 U.S.C. § 14317(a) could not have been promoted.  A.R.  31-32.  The ABCMR's conclusions on this point were not arbitrary or capricious.

**H.  The Plaintiff's Retirement Was Lawful**

The plaintiff misapprehends the procedural posture of applications to the ABCMR and this Court.  The plaintiff fails to recognize that in an application to the ABCMR, "[t]he ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence." AR 15-185, ¶ 2-9.  In this Court, the plaintiff has the burden of establishing by "cogent and clearly convincing evidence" the existence of a material legal error or injustice.  McDougall v. Widnall, 20 F. Supp 2d 78, 82 (D.D.C. 1998).

The plaintiff's claim that the ABCMR's decision creates gross injustice to officers, with

14

unsubstantiated allegations, is irrelevant to this case.  P.M. 36.  It is undisputed that the DAIG substantiated three allegations against the plaintiff.  The plaintiff does not even attempt to challenge two of the three substantiated allegations in his exhaustive claims of error.  The ABCMR and this Court are limited to the facts before them.  In this case, those facts reveal an officer with substantiated allegations of misconduct who had not been confirmed by the Senate, who reached his mandatory service, and who stated that he voluntarily retired.  See A.R. 496.  Furthermore, as established in the Defendant's Motion to Dismiss, in part, and for Summary Judgment, the plaintiff was not promotable at the time he retired.  The ABCMR's reliance on the supporting documents it obtained and the conclusion that the plaintiff's promotion would have been reviewed by an adverse panel or a Promotion Review Board prior to resubmission to the Senate is not arbitrary or capricious.  A.R. 14-15; 31-32.

## CONCLUSION

Because the ABCMR's full rationale can be reasonably discerned, and only the most egregious agency decisions do not satisfy the APA's very deferential standard of review, <u>Kreis v. Air Force</u>, 866 F.2d 1508, 1515 (D.C. Cir. 1989), this Court must uphold its judgment even if reasonable minds might reach differing conclusions.  <u>Dickson v. Secretary of Defense</u>, 68 F.3d 1396, 1404 (D.C. Cir. 1995).  For the foregoing reasons, defendant respectfully requests that the Court grant defendant's motion to dismiss, in part, and for summary judgment.  Defendant also respectfully requests that the Court deny plaintiff's Cross Motion for Summary Judgment.

                Respectfully submitted,

                _____/s_____
                KENNETH L.  WAINSTEIN, D.C.  Bar #451058

United States Attorney


_____/s_____
RUDOLPH CONTRERAS D.C. Bar No. 434122
Assistant United States Attorney


_____/s_____
KEVIN K. ROBITAILLE
Special Assistant U.S. Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 353-9895

Of Counsel:
Lt. Col. Joseph Fetterman
Captain Kevin McCart
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia 22203-1837