UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES APPLEBY,                                    :
                                                   :
            Plaintiff,                             :
                                                   :        Civil Action No. 06-0193 (RBW)
v.                                                 :
                                                   :
THE HONORABLE FRANCIS                              :
HARVEY, SECRETARY OF THE                           :
ARMY,                                              :
                                                   :
            Defendant.                             :
_____            :

MEMORANDUM OPINION

The plaintiff, a retired Florida Army National Guard ("FLARNG") officer, brings this

action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (2000), seeking review of

a decision issued by the Army Board for the Correction of Military Records ("ABCMR" or

"Board") for alleged violations of the United States Constitution, United States military

regulations, and federal statutory law.  Complaint ("Compl.") at 1.  The plaintiff requests that this

Court order the Secretary of the Army to expunge from his military record all documents

referencing a Department of the Army Inspector General ("DAIG") investigation and all

documents related to the decision to withhold his name from placement on the Brigadier General

Promotion List.  Compl. at 34.  The plaintiff also requests, among other things, that his name be

restored to the Brigadier General Promotion List.  Id.  Currently before the Court is the

Defendant's Motion to Dismiss, In Part, and for Summary Judgment [D.E. # 13] and the

Plaintiff's Cross-Motion for Summary Judgment [D.E. # 17].[1]  For the reasons discussed

_____

[1]  The following papers have also been submitted to the Court by the parties in connection to these motions:
the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, In Part, and
for Summary Judgment ("Def.'s Mem."); the plaintiff's Memorandum in Support of Plaintiff's Cross-Motion for

(continued...)

hereafter, the Court will grant the defendant's motion to dismiss and for summary judgment and deny the plaintiff's cross-motion for summary judgment.

## I.    Factual Background

On October 31, 1987, the plaintiff accepted an appointment to become a member of the FLARNG. Defendant's Statement of Material Facts Which Are Not in Genuine Dispute. ("Def.'s SOF") ¶ 4.[2] After five years of service the plaintiff was promoted to the rank of Lieutenant Colonel and was then promoted to the rank of Colonel on March 6, 1996. Id. In March of 1999, the plaintiff was selected by the Adjutant General ("AG") of the Florida National Guard ("FNG") to assume command of a FNG Major Command and to serve simultaneously as the Deputy Commanding General of the 32nd Army Air and Missile Defense Command ("AAMDC"), an active duty Army Headquarters. Id. ¶ 5. On July 27, 2000, the Secretary of Defense announced that the plaintiff had been selected for promotion to the rank of Brigadier General and his name was submitted by the President of the United States to the Senate for confirmation on September 13, 2000. Id. ¶ 7.

On September 28, 2000, before action on the nomination was taken by the Senate, the DAIG received a memorandum from the FLARNG's Inspector General ("IG") referring a

---

[1](...continued)
Summary Judgment and in Opposition to Defendant's Motion to Dismiss, In Part, and for Summary Judgment ("Pl.'s Mem."); the defendant's Consolidated Memorandum in Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply Memorandum in Support of Defendant's Motion to Dismiss, In Part, and for Summary Judgment ("Def.'s Reply"); and the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Reply").

[2]The facts referenced primarily by the Court and found not to be genuinely in dispute are those asserted in the Defendant's Statement of Material Facts Which Are Not in Genuine Dispute and not challenged in the Plaintiff's Response to Defendant's Statement of Material Facts Which Are Not in Genuine Dispute ("Pl.'s Resp. to SOF"). Where agreement does not exist, the Court will so indicate. However, it appears that there are no material facts that are genuinely in dispute.

complaint that had been made pursuant to the Military Whistleblower Protection Act ("MWP Act"), 10 U.S.C. § 1034 (2000), accusing the plaintiff "of taking reprisal actions against a subordinate for making protected disclosures to his chain of command regarding [purported] criminal activities."  Id. ¶ 8.  Colonel Appleby was notified by telephone by the FNG AG on October 3, 2000, that he was being removed from the general officer promotion list at the request of the DAIG based on the whistleblower complaint that had been filed against him.[3]  Id. ¶ 9. Thereafter, on October 6, 2000, Colonel Appleby was notified again by telephone by the Deputy IG of the DAIG that based on the complaint his name had been withheld by the Army from the list of officers whose promotions were confirmed by the Senate in October 2000.  Id. ¶ 10. Colonel Appleby was subsequently advised on January 16, 2001, by the FNG AG, that the reprisal allegation could not be substantiated.  Id. ¶ 11.  However, he was informed that the whistleblower investigation had revealed other issues and that the authority of the Vice Chief of Staff ("VCSA") was needed for these newly discovered matters to be further investigated.  Id. And, on January 31, 2000, the VCSA directed the DAIG to investigate the improprieties allegedly committed by senior officials assigned to the 32nd AAMDC of the FLARNG.  Id. ¶ 12. The DAIG Report of Investigation ("ROI"), which was issued on June 28, 2001, and approved by the VCSA on the same day, concluded that the plaintiff had failed to ensure that a subordinate commander was properly relieved from a command position, that he had improperly prepared and processed a favorable annual officer evaluation report ("OER") of that subordinate commander, and that he had taken reprisals against junior officers for making protected

---

[3]The plaintiff states that he was informed that he was being "temporarily" removed from the general officer promotion list and that the Army, not the Secretary of Defense, requested that Congress withhold his nomination for promotion to the rank of Brigadier General pending completion of a DAIG investigation.  Pl.'s Resp. to SOF ¶ 9.

communications.  Id. ¶ 13.  Shortly after the ROI was issued, the plaintiff authored an email

sometime around July 13, 2001, which he forwarded to 35 individuals, informing them of his

decision to voluntarily retire from the FLARNG, effective July 31, 2001.  Id. ¶ 14; Compl. at 5 ¶

37.  The email further explained that after the IG investigation was satisfactorily completed,

Colonel Appleby understood that he would be eligible to have his name resubmitted to the

Senate for confirmation of his nomination to the rank of Brigadier General, but that he had

chosen not to go through the process again.[4]  On July 31, 2001, Colonel Appleby was transferred

to retired status in the United States Army Reserve Control Group because he had fulfilled his

maximum authorized years of service.  Def.'s SOF ¶ 15.

On October 19, 2001, the VCSA issued a Memorandum of Concern ("MOC") to the

plaintiff indicating that he would not be officially reprimanded because the VCSA believed the

plaintiff thought his actions it had investigated were in the best interest of his military unit.  Id. ¶

16.  Nonetheless, the VCSA indicated that Colonel Appleby's actions did not meet the standards

expected of a senior officer.  Id.  However, the MOC was not placed in the plaintiff's Official

Military Personnel File and the matter was considered closed.  Id.

On March 23, 2003, Colonel Appleby filed an application with the ABCMR requesting

that the Board: (1) direct that he be promoted by operation of law to the rank of Brigadier

General; (2) remove a Letter of Concern ("LOC") allegedly contained in his military personnel

file; (3) award him all back pay, allowances, and benefits to which he is allegedly entitled; and

---

[4]The plaintiff agrees that he drafted and circulated the email regarding his retirement, but disagrees with any
assertion that the information he related, which he received from Colonel Bruce Davis, is factually correct.  Pl.'s
Resp. to SOF ¶ 14.  According to the plaintiff, Colonel Davis informed him that he would have to repeat the entire
promotion selection process, which normally takes six to nine months to complete. Pl.'s Mem. at 5.  Colonel
Appleby asserts that this information was incorrect.  Id.

(4) retire him at the rank of Brigadier General with all associated rights, benefits, and privileges

or, alternatively, reinstate him to the FLANG at the rank of Brigadier General, along with

crediting him with service at that rank from the date he otherwise would have been promoted to

the date of his reinstatement.  Id. ¶ 17; Compl. at 7 ¶ 51; Pl.'s Mem. at 6-7.

Before the ABCMR's decision was issued, the plaintiff was provided with an advisory

opinion prepared by the National Guard Bureau General Officer Management Office.  Pl.'s Mem.

at 7 (citing Administrative Record ("Admin. R.") at 18-20).  The advisory opinion concluded that

the plaintiff's name had properly been withheld from the Brigadier General promotion list

pursuant to Department of Defense ("DOD") regulations.  Admin. R. at 7.  However, the

advisory opinion went on to state that Colonel Appleby's nomination should be forwarded to the

Senate for confirmation consideration, and that if he is confirmed, his records be corrected to

reflect his promotion to the rank of Brigadier General as of October 6, 2000, with a subsequent

retirement date of July 31, 2000.  Id.  On August 11, 2005, the ABCMR rendered its final

decision unanimously denying the plaintiff's requested relief.  Def.'s SOF ¶ 18.  The decision

was announced in a written "record of proceedings," which concluded that the plaintiff had failed

to present "satisfactory evidence of error or injustice to warrant relief."  Id.  (citing Admin. R. at

16); see also id. ¶ 19 (citing Admin. R. at 2-16).

The plaintiff filed his nine count complaint in this Court on February 3, 2006.  Counts I,

II and III allege that the DAIG lacked legal authority and jurisdiction to investigate the Military

Whistleblower Protection Act complaint.  Compl. at 14-21.  Counts IV, V, and VI allege

violations of 10 U.S.C. § 14311(2000) and Army Regulation 600-8-29 for delaying Colonel

Appleby's promotion.  Id. at 21-28.  Count VIII alleges a violation of the plaintiff's right to due

process resulting from the failure to provide him with proper and timely notice and therefore an opportunity to respond to the adverse information used against him.  Id. at 31.  Finally, Count IX alleges that Colonel Appleby's retirement was involuntary and therefore unlawful.  Id. at 33.  The defendant has moved to dismiss Counts I, II, III, and VIII pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or alternatively request summary judgment on all counts of the complaint.  In return, the plaintiff has filed a cross-motion for summary judgment on all counts of the complaint.

## II.    Standard of Review

### A.    Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a complaint need only provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (citing Fed. R. Civ. P. 8(a)).  And, when reviewing such a motion, the court must accept as true all the factual allegations contained in the complaint.  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  Thus, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the

complaint, and matters about which the Court may take judicial notice.  <u>Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

**B.    Rule 56 of the Federal Rules of Civil Procedure**

This Court will grant a motion for summary judgment under Rule 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, this Court must view the evidence in the light most favorable to the non-moving party.  <u>Bayer v. United States Dep't of Treasury</u>, 956 F.2d 330, 333 (D.C. Cir. 1992).  However, the non-moving party cannot rely on "mere allegations or denials . . . , but . . .  must set forth specific facts showing that there [are] genuine issue[s] for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (citation omitted).  Under Rule 56, "if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted.  <u>Hazward v. Runyon</u>, 14 F. Supp. 2d 120, 122 (D.D.C. 1998) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). The party moving for summary judgment bears the burden of establishing the absence of evidence that supports the non-moving party's case.  <u>Id.</u>  In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).

C.    The Administrative Procedure Act

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2) (2000), "[j]udicial

review of the final decision of a military correction board is limited to a determination of whether

the board's decision 'is arbitrary and capricious, contrary to law, or unsupported by substantial

evidence.'" Roberts v. Harvey, 441 F. Supp. 2d 111, 118 (D.D.C. 2006) (quoting Frizelle v.

Slater, 111 F.3d 172, 176 (D.C. Cir. 1997)); Calloway v. Brownlee, 366 F. Supp. 2d 43, 54

(D.D.C. 2005) (RBW).  "[A] party seeking review of a board decision bears the burden of

overcoming 'the strong, but rebuttable, presumption that administrators of the military, like other

public officers, discharge their duties correctly, lawfully and in good faith.'" Roberts, 441 F.

Supp. 2d at 118 (quoting Frizelle, 111 F.3d at 177).  "As a general matter, the scope of review

under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment

for that of the agency." Id. (internal quotations and citation omitted).  Accordingly, a court "will

not disturb the decision of an agency that has 'examined the relevant data and articulated a

satisfactory explanation for its action including a rational connection between the facts found and

the choice made.'" Id. (quoting MD Pharm. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C.

Cir. 1998) (citations omitted).

"The requirement that agency action not be arbitrary and capricious includes a

requirement that the agency adequately explain its result." Dickson v. Sec'y of Def., 68 F.3d

1396, 1404 (D.C. Cir. 1995) (citing Public Citizen, Inc. v. FAA, 988 F.2d 186, 197 (D.C. Cir.

1993); Fed. Election Comm'n v. Rose, 806 F.2d 1081, 1088 (D.C. Cir. 1986)).  The arbitrary and

capricious standard of the APA "mandat[es] that an agency take whatever steps it needs to

provide an explanation that will enable the court to evaluate the agency's rationale at the time of

decision." <u>Id.</u> (citation omitted).  "This does not mean that an agency's decision must be a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" <u>Id.</u> (citations omitted).  However, the explanation provided by the agency must, at a minimum, contain "a rational connection between the facts found and the choice made." <u>Id.</u> (citation omitted).

As the District of Columbia Circuit has recognized, the final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." <u>Kreis v. Sec'y Air Force</u>, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (citations omitted); <u>see also</u> <u>Roberts</u>, 441 F. Supp. 2d at 119.  "This high degree of deference arises from the statutory language authorizing a Secretary of a military department – acting through civilian boards – to correct military records 'when the Secretary considers it necessary to correct an error or remove an injustice.'" <u>Roberts</u>, <u>id.</u> (quoting 10 U.S.C. § 1552(a)(1)) (2000).  In this regard, the <u>Kreis</u> court reasoned that:

> It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '<u>when he considers it necessary</u> to correct an error or remove an injustice,' 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, <u>i.e.</u>, that there has been an error or injustice.

<u>Kreis</u>, 866 F.2d at 1514.  While only the "most egregious" Board decisions will fail this deferential standard of review, a plaintiff can establish that the Board's decision-making process was flawed and in violation of the APA by showing that the Board did not consider or respond to an argument that did not appear to be "frivolous" on its face and could affect the Board's ultimate disposition." <u>Roberts</u> 441 F. Supp. 2d at 119 (quoting <u>Frizelle</u>, 111 F.3d at 177); <u>see also</u> <u>Calloway</u>, 366 F. Supp. 2d at 54.

### III.    Legal Analysis

#### A.    The Defendant's Motion to Dismiss

The defendant moves to dismiss Counts I, II, III and VIII of the complaint under Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state claims upon which relief can

be granted.  For the reasons set forth below the motion is granted.

Count I of the complaint alleges that the DAIG lacked legal authority to investigate the

MWP Act complaint filed against the plaintiff.  Compl. at 16 ¶ 120.  The theory underlying the

claim is the plaintiff's position that "[m]embers of the FLARNG are not 'members of the armed

services' for purposes of the Military Whistleblower Protection Act except under certain

circumstances," which are not applicable in this case.  Id. at 14 ¶ 110.  In response, the defendant

contends that Count I is based upon an erroneous reading of the MWP Act.  Def.'s Mem. at 6.

Although the plaintiff raises these allegations in Count I of his complaint, it appears that he has

conceded the matter because he has not responded to the defendant's argument in his opposition

or raised the viability of this claim again in his cross motion for summary judgment.

"It is well understood in this Circuit that when a plaintiff files an opposition to a motion

to dismiss addressing only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded."  Hopkins v. Women's Div., General

Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (RBW) (citing FDIC v.

Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997); see also Day v. D.C. Dep't of Consumer &

Regulatory Affairs, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an

argument that the opposing party makes in a motion, the court may treat that argument as

conceded.").  Notwithstanding the plaintiff's silence on this issue in his responsive pleading, the

Court notes that, as a matter of law, the MWP Act does apply to members of a State National Guard because "all persons who have enlisted in a State National Guard unit have simultaneously enlisted in the National Guard of the United States," which is a component of the United States Army. Perpich v. Dep't of Defense, 496 U.S. 334, 345 (1990). Pursuant to 10 U.S.C. § 101(c)(3) (2000), the Army National Guard of the United States is defined as "the reserve component of the Army all of whose members are members of the Army National Guard." And, because the Army National Guard of the United States is a component of the Army, it falls under the definition of armed forces for the purposes of the MWP Act. The DAIG therefore had legal authority to investigate the alleged violation made against the plaintiff under this Act. Accordingly, Count I of the complaint is dismissed for failure to state a claim upon which relief can be granted.

Counts II and III of the complaint allege that the DAIG lacked jurisdiction to entertain the whistleblower complaint. Compl. at 16. Specifically, Count II alleges that the DAIG did not have jurisdiction over the complaint lodged against Colonel Appleby because it was not filed within sixty days of the alleged incident. Id. at 17; Pl.'s Mem. at 27. Thus, argues the plaintiff, the IG was precluded from investigating the allegation pursuant to 10 U.S.C. § 1034(c)(4) and Army Regulation 20-1. Id. 10 U.S.C. § 1034(c)(4) provides that "[n]either an initial determination under paragraph (3)(A) nor an investigation under paragraph (3)(D) is required in the case of an allegation made more than 60 days after the date on which the member becomes aware of the personnel action that is the subject of the allegation." Additionally, Army Regulation 20-1, Chapter 6-6(i) states:

[T]he IG, DOD is required to investigate allegations of individuals taking (or

> threatening to take) unfavorable personnel actions or withholding (or threatening
> to withhold) favorable personnel actions as reprisal against a member of the
> Armed Forces for communicating with an MC [Member of Congress] or a
> member of an audit, inspection, investigation or law enforcement organization
> withing DOD. . . . [W]hen such complaints are made within 60 days of learning of
> the reprisal, [the] military whistleblower legislation applies.

Id. (quoting Army Regulation 20-1, Chapter 6-6(i)).  The plaintiff urges this Court to interpret the

statute in conjunction with Army Regulation 20-1 to mean that if a complaint is not brought

within 60 days of the alleged act of reprisal, the IG is precluded from investigating the purported

violation.  Pl.'s Mem. at 27.  In its evaluation of this argument, the ABCMR concluded that

"[w]hile applicable laws and regulations indicate that a whistleblower complaint should be

received within 60 days of discovery, it does not preclude the Department from considering or

investigating complaints after 60 days."  Admin. R. at 14 ¶ 2.  The ABCMR further reasoned

that:

> the Army had a Federal interest in the applicant not only due to his status as an
> officer but also in regards to Federal Recognition and his position as the deputy
> commander of a one-of-a-kind unit that is also an active Army unit with a
> contingency/deployment mission.  Accordingly, the IG had a responsibility to
> investigate any matters it deemed appropriate to the events at hand (regardless of
> the outcome) if authorization from the appropriate authority was obtained
> beforehand.  Such authorization was obtained from the VCSA in accordance with
> the applicable regulations and there appears to be no violations of the applicant's
> rights in this matter.

Id. at 12 ¶ 4.  While the plaintiff contends that the ABCMR's decision on this issue was arbitrary,

capricious, not supported by substantial evidence, and contrary to law, Pl.'s Mem. at 29, the

record clearly shows that the ABCMR's assessment of this issue "adequately explains its result,"

Dickson, 68 F.3d at 1404, and clearly establishes that the ABCMR "examined the relevant data

and articulated a satisfactory explanation for its action including a rational connection between

-12-

the facts found and the choice [made]."  Roberts, 441 F. Supp. 2d at 118.

A whistleblower complaint having been filed against the plaintiff required that an investigation be undertaken, during which other alleged indiscretions were uncovered.  Although the Army regulations at issue mandate an investigation if a complaint is made within 60 days, the ABCMR is certainly not precluded from investigating complaints received after 60 days.  Moreover, as the ABCMR stated, the Army had a clear  Federal interest to investigate the transgressions against the plaintiff, not only because he was being considered for a promotion to the rank of Brigadier General, but also because he held the position as deputy commander of an active special unit that could be deployed at any time.  Thus, this Court "will not disturb the decision of [the ABCMR; which] examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  Id. (citing MD Pharm., 133 F.3d at 16).  Accordingly, Count II of the complaint is dismissed for failure to state a claim for which relief can be granted and summary judgment on the plaintiff's cross-motion is denied on this Count of the complaint.

The above legal conclusion is equally applicable with respect to Count III of the complaint, wherein the plaintiff alleges that the IG's consideration of the whistleblower complaint was improper because the complainant failed to exhaust his available administrative remedies.  Pl.'s Mem. at 29.  As support for this position, the plaintiff relies on Army Regulation 20-1, which provides:

> [T]here are many situations for which law or regulation provide soldiers a remedy or means of redress.  Soldiers must seek the remedy or redress before an IG can provide assistance.  Once the soldier has used the available redress procedures, IG assistance is limited to a review of the situation to determine if the soldier was afforded due process provided by law or regulation.

Id. (citing Army Regulation 20-1).  The plaintiff further alleges that the ABCMR did not address

his position on this point in its "Discussion and Conclusions."  Compl. at 21 ¶ 166.  The

defendant agrees that the plaintiff correctly quotes Army Regulation 20-1, but points out that

whistleblower complaints are addressed in a separate section of the regulation because "they are

a unique type of allegation subject to unique consideration and treatment."  Def.'s Reply at 12.

Moreover, the defendant contends that the plaintiff's reading of Army Regulation 20-1would

undermine one purpose of the whistleblower provisions – to provide a quick resolution to such

complaints.  Id. at 13.

As for the plaintiff's allegation that the lack of exhaustion claim was not addressed by the

ABCMR, this argument is simply incorrect.  In fact, the ABCMR noted that the exhaustion claim

had been raised by the plaintiff, Admin. R. at 4, and that the plaintiff continued to "contest the

lawfulness of the investigation."  Id. at 8.  In any event, as explained by the ABCMR in the

Administrative Record:

> The Army had a Federal interest in the [plaintiff] not only due to his status as an
> officer but also in regards to Federal Recognition and his position as the deputy
> commander of a one-of-a-kind unit that is also an active Army unit with a
> contingency/deployment mission.

Admin. R. at 14 ¶ 4.  As such,

> the IG had a responsibility to investigate any matters it deemed appropriate to the
> events at hand (regardless of the outcome) if authorization from the appropriate
> authority was obtained from the VCSA in accordance with the applicable
> regulations and there appears to be no violation of the [plaintiff's] rights in that
> matter.

Id.  While the ABCMR did not explicitly state that the argument at hand was being addressed, it

is nonetheless patently clear from the above statements that it did "examine[] the relevant data"

concerning the plaintiff's claims and has "articulated a satisfactory explanation for its action."

-14-

Calloway, 366 F. Supp. 2d at 53 (internal quotation marks and citations omitted). Thus, the conclusion reached by the ABCMR was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Moreover, the Court also seriously questions the applicability of the exhaustion requirement to the situation here. Exhaustion requirements are imposed to afford agencies the initial opportunity to address the concerns of an alleged aggrieved party. And that party here would be the whistleblower, not the plaintiff. Thus, even if the plaintiff is correct that the ABCMR failed to address his exhaustion challenge, the omission would be of no moment. Accordingly, Count III is dismissed for failure to state a claim upon which relief can be granted and summary judgment is denied on this claim with respect to the plaintiff's cross-motion for summary judgment.

Count VIII of the complaint alleges that the plaintiff's right to due process was violated because "he was never informed by the DAIG, orally or in writing, of the specifics of the allegations against him at any time during the investigation." Compl. at 31 ¶ 250. As support for this position, the plaintiff relies on Army Regulation 20-1, paragraph 7-6, which states that "[i]f an individual was not informed of the unfavorable information during the IG investigation, the IG will advise the person concerned, orally or in writing, of its substance before the IG investigation is completed." Id. at 31 ¶¶ 248-49 (citing Army Regulation 20-1, dated March 29, 2002).[5] The plaintiff also contends that when he first learned of the allegations against him on March 14, 2001, it was in a "cursory" manner. Id. at 31-32 ¶¶ 251-52. And, although Colonel Appleby was interviewed and questioned thereafter in great detail on two occasions during the

---

[5]The parties have not provided the Court with the 2002 version of Army Regulation 20-1, paragraph 7-6. However, the defendant does not challenge the wording of the regulation as indicated by the plaintiff, but rather takes exception to the plaintiff's interpretation of it. Def.'s Mem. at 13.

investigation, he contends that "[a]t no time during the two interviews did the DAIG apprise [him] of the specific allegations that formed the basis of the allegations against him. Id. at 32 ¶¶ 254-56. The defendant, on the other hand, alleges that Count VIII of the complaint fails to state a claim upon which relief can be granted because it is based on an erroneous interpretation of Army Regulation 20-1. Def.'s Mem. at 13. For the following reasons, the defendant's motion to dismiss Count VIII of the complaint is denied and the claim is remanded to the Secretary for a determination of whether the plaintiff was afforded adequate notice of the charges that had been made against him.

There is no question that the plaintiff was advised of the charges against him. However, he maintains that the notice he received did not provide any details of the particular actions forming the bases of the allegations. Specifically, he acknowledges that on March 14, 2001, during an interview conducted by an investigator, he was informed that he was "suspected of the following allegations which [they] want[ed] to question [him] about: That [he] improperly relieved an officer; that [he] improperly processed Officer Evaluation Reports; and, that [he] reprised against an Officer for making a protected communication. Compl. at 31-32 ¶¶ 251-252. Additionally, on May 21, 2001, the plaintiff was again informed during the course of the investigation "of the allegations against him in the same manner as he [was] during the March 14, 2001 interview." Id. at 32 ¶¶ 254-255; see also Admin. R. at 153 (acknowledging that the plaintiff was notified as early as March 14, 2001, of the specific allegations against him). Thus, as the record indicates, the plaintiff was advised, prior to the completion of the investigation on

June 29, 2001, of the allegations against him.[6]  Nonetheless, he insists that "[t]he DAIG did not

provide any details of the particular actions forming the bases of the allegations against [him]."

Compl. at 32 ¶ 256.

"The requirement that agency action not be arbitrary and capricious includes a

requirement that the agency adequately explain its result." Dickson, 68 F.3d at 1404 (citing

Public Citizen, Inc., 988 F.2d at 197; Fed. Election Comm'n, 806 F.2d at 1088) Thus, the

arbitrary and capricious standard of the APA "mandat[es] that an agency take whatever steps it

needs to provide an explanation that will enable the court to evaluate the agency's rationale at the

time of decision." Id. (citation omitted).  Here, based on the record before it, the Court questions

whether the plaintiff was provided adequate notice of the allegations against him.  The Court has

this reservation despite the fact that the plaintiff was extensively interviewed on two occasions –

March 14, 2001, and May 21, 2001 – after the allegations that are the subject of Count VIII came

to light.  According to the plaintiff, a 78-page type-written report was produced from the March

interview and an additional 91page type-written report was produced as a result of the May

interview.  Compl. at 31-32 ¶¶ 251-54.  Yet, the defendant did not include these reports in the

administrative record, nor did the defendant address the plaintiff's inadequate notice argument.

Thus, it is difficult for this Court to discern whether the plaintiff was adequately advised of the

---

[6]In Count VIII of the complaint, Colonel Appleby claims that he was denied his procedural right of notice and response because the DAIG never informed him orally or in writing, of the specifics of the allegations against him at any time during the investigation.  Compl. at 31 ¶¶ 250-251.  He seems to suggest that he was entitled to notice and an opportunity to respond in writing prior to being removed from the promotion list.  Id.  Colonel Appleby's assessment is illogical, however, because the investigation that he is referring to in Count VIII is a subsequent investigation that was triggered as a result of the initial whistleblower complaint filed against him.  In other words, as a result of the whistleblower complaint, other issues were uncovered that required further investigation.  Thus, at the time the plaintiff was removed from the promotion list, the investigation of the charges alleged in Count VIII had not yet commenced.  And, the regulation that Colonel Appleby relies upon to support his contention, specifically provides that "[t]he individual has the right to know of the unfavorable information during the IG inquiry or investigation."  Id. at 31 ¶ 248 (citing Army Regulation 20-1 at 7-6).

allegations against him.

The District of Columbia Circuit has concluded that the failure of a ABCMR to respond to arguments raised by a plaintiff, "which do not appear frivolous on their face and could affect the Board's ultimate disposition, . . . [is] arbitrary." Frizelle, 111 F.3d at 177; see also Mudd v. Caldera, 26 F. Supp. 2d 113, 123 (D.D.C. 1998). Accordingly, because it appears the plaintiff raised his inadequacy notice argument with the ABCMR, and the argument is not frivolous on its face, the Court must conclude that the ABCMR's failure to address it was arbitrary and this case must be remanded to the Secretary of the Army to address this argument. Therefore, the defendant's motion to dismiss Count VIII of the complaint is denied without prejudice.

### B.    The Parties' Cross-Motions for Summary Judgment

Both parties move for summary judgment on the remaining counts of the plaintiff's complaint – Counts IV, V, VI, VII and IX. Def.'s Mem. at 14-20; Pl.'s Mem. at 1. Counts IV, V and VI of the complaint all allege violations of 10 U.S.C. § 14311 (2000) and Army Regulation 600-8-29 for delaying Colonel Appleby's promotion (Count IV), failing to notify him in writing of the Army's decision to delay his promotion and provide him an opportunity to respond in writing to the Secretary of the Army (Count V), and by failing to obtain Secretary of the Army approval to delay Colonel Appleby's promotion beyond the authorized six month period (Count VI). Compl. at 21, 25 & 27. 10 U.S.C. § 14311(a) provides:

> (a) Delay during investigations and proceedings.--(1) Under regulations prescribed by the Secretary of Defense, the appointment of an officer to a higher grade may be delayed if any of the following applies before the date on which the appointment would otherwise be made:
>
> (A) Sworn charges against the officer have been received by an officer exercising

general court-martial jurisdiction over the officer and the charges have not been disposed of.

(B) An investigation is being conducted to determine whether disciplinary action of any kind should be brought against the officer.

(C) A board of officers has been convened under section 14903 of this title to review the record of the officer.

With respect to the plaintiff's allegation of delay, Army Regulation 600-8-29 at 1-19(a)(4) states that "[a]n officer's promotion is automatically delayed . . . when the officer is – [u]nder investigation that may result in disciplinary action of any kind being taken against him or her.

In Count IV of the compliant the plaintiff contends that he was not "officially" under investigation when he was advised that a whistleblower complaint had been filed against him and consequently removed from the list of officers to be submitted to the Senate for confirmation to Brigadier General because the action taken against him does not qualify as an investigation as defined in 10 U.S.C. § 14311. Pl.'s Mem. at 21; Compl. at 22 ¶¶ 174-76. Thus, the plaintiff contends that there was no basis for delaying his promotion under 10 U.S.C. § 14311. Pl.'s Mem. at 20; Compl. at 24 ¶ 190. He urges the Court to believe that the investigation against him did not formally begin until the VCSA issued a directive that the DAIG investigate alleged improprieties by senior officials assigned to the 32nd AAMDC of the FLARNG. Pl.'s Mem. at 20-21; Compl. at 24 ¶¶ 186-189. In other words, the plaintiff contends that the events occurring between the filing of the whistleblower complaint and the issuance of the VCSA directive to the DAIG was not an investigation within the terms of § 14311. Rather, he asserts, the "real" investigation only began after the VCSA issued its directive with respect to the improprieties uncovered during the whistleblower probe. The Court cannot agree with the plaintiff's

assessment.

The plaintiff clearly became the subject of an investigation when the whistleblower complaint was received.  As the defendant notes, the plaintiff was under investigation pursuant to DOD Instructions ("DODI") 1320.4 before the Senate had an opportunity to confirm his nomination because the Secretary of Defense had requested that the Senate defer consideration of the plaintiff's promotion "'until the investigation [was] complete . . . and a determination of suitability' was made."  Admin. R. at 31; Def.'s Reply at 8.[7]  Moreover, the ABCMR addressed the plaintiff's argument on this point and concluded that "[t]he applicant's contention that his promotion was unjustly and illegally withheld from Senate confirmation has been noted and found to be without merit."  Admin. R. at 161.  The ABCMR further stated:

> Although the complaint that was received at the time the applicant was scheduled for Senate confirmation for promotion to the rank of BG was subsequently determined unfounded for reprisal, the <u>investigation</u> uncovered additional information that would be expected to be made available for Senate confirmation, regardless of how serious or unimportant the applicant may deem it.  Accordingly, his name was properly withdrawn until such time as the investigation was finalized.

<u>Id.</u> at 162 (emphasis added).  The Administrative Record therefore clearly shows that the plaintiff was under investigation the moment the whistleblower complaint was filed against him.  Once

---

[7]DODI 1320.4 at ¶ 6.2.1.7 states:
In those cases where the officer(s) identified with adverse or alleged adverse information is on a promotion list as outlined in subparagraph 6.2.1.6., above, the ASD(FMP), with the verbal concurrence of the Director, WHMO, and the Executive Secretary of the Department of Defense shall advise the SASC, and ask it to defer nomination of the officer(s) concerned while permitting the remaining officers on the list to continue forward for confirmation. The ASD(FMP) shall provide the Secretary of Defense copies of the memorandum sent to the Director, WHMO and letter sent to the Chairman, SASC advising of the requests made under this subparagraph. The ASD(FMP) shall also advise the Chairman of the Joint Chiefs of Staff.

again, this Court must conclude that the ABCMR "examined the relevant data" concerning the

plaintiff's claims and "articulated a satisfactory explanation for its action." Calloway, 366 F.

Supp. 2d at 53 (internal quotation marks and citations omitted). And, the conclusion reached by

the ABCMR was not arbitrary, capricious, contrary to law, or unsupported by substantial

evidence. Accordingly, summary judgment is granted to the defendant with respect to Count IV

of the complaint and the plaintiff's cross-motion for summary judgment on this Count is denied.

     In Count V of the complaint the plaintiff also contends that the Army violated 10 U.S.C.

§ 14311 and Army Regulation 600-8-29, but as to this count, he alleges that the violation resulted

from the Army's failure to notify him in writing of its decision to delay his promotion and

provide him an opportunity to respond in writing to the Secretary of the Army regarding this

decision. Compl. at 25 ¶ 199; Pl.'s Mem. at 16. He posits that the ABCMR's decision on this

issue was contrary to law, arbitrary, capricious, and unsupported by substantial evidence. Id.

     10 U.S.C. § 14311(c) provides:

> (c) Notice to officer. – (1) The appointment of an officer to a higher grade may not
> be delayed under subsection (a) or (b) <u>unless the officer is given written notice of
> the grounds for the delay</u>. The preceding sentence does not apply if it is
> impracticable to give the officer written notice before the date on which the
> appointment to the higher grade would otherwise take effect, but in such a case
> the written notice shall be given as soon as practicable.
>
> **(2)** An officer whose promotion is delayed under subsection (a) or (b) shall be
> <u>given an opportunity to make a written statement</u> to the Secretary of the military
> department concerned <u>in response to the action taken</u>. The Secretary shall give
> consideration to any such statement.

(emphasis added). As previously noted above, the plaintiff acknowledged that he was notified of

the decision to withdraw his name from consideration by the Senate because a complaint had

been filed against him.  See Pl.'s Resp. to SOF ¶¶ 9-10.  Specifically, the plaintiff was notified by telephone that he was being removed from the Brigadier General promotion list because a complaint had been filed accusing him of taking reprisal actions against a subordinate for making protected disclosures to his chain of command regarding alleged criminal activities.  Id. ¶¶ 8-9 (citing Admin. R. at 8 ¶¶ 7-9).  Consequently, the plaintiff was afforded the opportunity to provide a written response to the Secretary of the Army.  And as the ABCMR noted, "[w]hile lack of written notification is not condoned, there is no evidence submitted by the applicant with his application to support [the contention that he was not advised of the action being taken] or evidence of harm that resulted from his telephonic notification [rather than] written notification."  Admin. R. at 162 ¶ 5.  Moreover, it is clear from the Administrative record that the plaintiff's claim of not being provided written notification was considered.  Id.  Although the ABCMR did not specifically address the plaintiff's contention that he was not provided the opportunity to respond in writing to the Secretary, it is reasonable to infer that once the plaintiff was notified of the charges against him, he had the opportunity to respond in writing "in response to the action taken."  10 U.S.C. § 14311(c).  This conclusion is evidenced by a letter the plaintiff sent to the Chief of Staff of the FLARNG stating that he understood that after receiving a report of the investigation from the Judge Advocate General he had 30 days to respond.  Compl. at 5 ¶ 37.  Moreover, Colonel Appleby demanded his right to the assistance of "experienced and competent legal representation to assist in that response."  Id.  And, Colonel Appleby did receive what he characterizes as a "highly redacted" copy of the ROI 21 days after what he contends was his involuntary retirement.  Compl. at 6 ¶ 42.  Thus, the plaintiff was aware and was taking full advantage of his right to present his position in response to the allegations against him.

The arbitrary and capricious standard of the APA "mandat[es] that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." Dickson, 68 F.3d at 1404 (citation omitted). "This does not mean that an agency's decision must be a model of analytic precision to survive a challenge. A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Id. Because "the scope of review under the arbitrary and capricious standard is narrow [this] Court [will] not substitute its judgment for that of the [ABCMR]." Roberts, 441 F. Supp. 2d at 118. Accordingly, summary judgment is granted on Count V in favor of the defendant and denied as to the plaintiff.

Count VI of the complaint alleges again that the Army violated 10 U.S.C. § 14311 and Army Regulation 600-8-29 by failing to obtain approval from the Secretary of the Army to delay Colonel Appleby's promotion beyond the six month period authorized by the statute and regulations. Compl. at 27 ¶ 216. 10 U.S.C. § 14311(d) provides, in pertinent part:

> (d) Maximum length of delay in promotion. – The appointment of an officer to a higher grade may not be delayed under subsection (a) or (b) for more than six months after the date on which the officer would otherwise have been promoted unless the Secretary concerned specifies a further period of delay.

And, Army Regulation 600-8-29 at 1-20(b) provides, in pertinent part, that "[a]n officer's promotion will not be delayed more than six months unless the [Secretary of the Army] or the Secretary's designee grants a further delay." The fact that the plaintiff's promotion was delayed beyond the six month period was specifically addressed by the ABCMR. As the ABCMR noted, an advisory opinion issued by the General Officer Management Office indicated that the Secretary of Defense had requested that "Congress withhold the plaintiff's nomination until the

investigation was complete and a determination of suitability was made, which effectively

authorized a promotion delay past a six-month period."  Def.'s Mem. (citing Admin. R. at 158).[8]

The advisory opinion specifically stated:

> On September 13, 2000, COL Appleby's nomination for Federal recognition to
> the grade of Brigadier General was received in the Senate.  On September 29,
> 2000, the Department of the Army Inspector General received an adverse
> allegation ascribed to COL Appleby.  On October 3, 2000, the Army notified the
> Secretary of Defense, as required by DODI 1320.4, paragraph 6.2.1.7, and the
> Secretary of Defense subsequently requested that Congress withhold COL
> Appleby's nomination until the investigation was complete.  Accordingly, COL
> Appleby's nomination was appropriately withheld.

Admin. R. at 31.  Thus, as the ABCMR found, the "Secretary concerned specifie[d] a further

period of delay."  10 U.S.C. § 14311(d).  This Court must therefore conclude that the ABCMR

"examined the relevant data and articulated a satisfactory explanation for its action."  Calloway,

366 F. Supp. 2d at 53 (internal quotation marks and citations omitted).  Accordingly, the

ABCMR's finding that the delay of Colonel Appleby's promotion was properly authorized

beyond § 14311(d)'s six month period was not was not arbitrary nor capricious.  Summary

judgment is therefore granted to the defendant on Count VI of the complaint and the plaintiff's

demand for summary judgment on this Count is denied.

Count VII of the plaintiff's complaint alleges that the DAIG erroneously concluded that

the LOCs issued by Colonel Appleby against two subordinate officers for substandard leadership

---

[8]The defendant also contends that the plaintiff's argument with respect to Count VI is based upon an
erroneous reading of 10 U.S.C. § 14311.  Def.'s Mem. at 9.  The plaintiff alleges that the Secretary of the Army
failed to authorize an additional delay beyond the initial 6-month period authorized by 10 U.S.C. § 14311.  Compl.
at 27 ¶ 216.  However, the period of delay is not determined by the Secretary of the Army, but rather it is the
Secretary of Defense who can request that the Senate delay a promotion.  Def.'s Mem. at 9.  Accordingly, it was the
Secretary of Defense who requested that the Senate delay consideration of the plaintiff's nomination.  Def.'s Mem. at
9 (citing Admin. R. at 31).  Thus, the plaintiff's interpretation that the Secretary of the Army has authority to
authorize a delay beyond the 6-month period is an incorrect reading of the statute.

and management were "Letters of Reprimand" and amounted to threats against the officers for making protected communications. Compl. at 28-29 ¶ 232-234.

During Colonel Appleby's command as the Deputy Commanding General of the 32nd AAMDC, Colonel Appleby conducted an investigation that allegedly raised serious issues about the leadership and integrity of key battalion officers, a Major and a Lieutenant. Compl. at 8 ¶ 61. Colonel Appleby concluded that both officers should be counseled regarding their conduct and the matters were addressed in two LOCs. Id. at 11 ¶ 89. Colonel Appleby contends that because he directed that the LOCs not be placed in the officers personnel files, the LOCs did not amount to adverse actions against the officers. Pl.'s Mem. at 33. Accordingly, he contends that the DAIG's conclusion that he issued the letters of reprimand as threats against the two subordinate officers were erroneous and therefore improperly served as a basis for his "non-promotion to Brigadier General and his eventual retirement from the FLARNG." Id. at 31.

On the other hand, the defendant opines that "the [p]laintiff is limited to challenging the ABCMR's decision in this Court and cannot attack the underlying decision that he asked [the Board] to review." Def.'s Reply at 13. Presumably, the defendant is referring to the wealth of case law "entrusting the primary duty of the correc[tion] of military records with the military corrections boards." See Harris v. United States, 14 Cl. Ct. 84, 89 (Cl. Ct. 1987); see also Sanders v. United States, 594 F.2d 804, 813-814 (Cl. Ct. 1979). Indeed, judicial review is limited to determining whether there has been substantial compliance with applicable statutes and regulations, whether the agency acted arbitrarily and capriciously, and whether there is substantial evidence to support the agency's decision. Wolfe v. Marsh, 835 F.2d 354, 358 (D.C. Cir. 1987); Dilley v Alexander, 603 F.2d 914, 919-20 (D.C. Cir. 1979). However, "the arbitrary

and capricious standard of the APA "mandat[es] that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." Dickson, 68 F.3d at 1404. Here, the defendant points out that the DAIG concluded that the letters the plaintiff issued to the two junior officers could be considered adverse actions prohibited by whistleblower protections based on the content of the letters. Def.'s Reply at 13. And, "[w]hether or not a letter is considered a letter of reprimand does not hinge on whether the letter is filed in a soldier's OMPF (official file) or MPRJ (local file)." Def.'s Reply at 13 (citing AR 600-37, ¶ 3-4.) Moreover, the FNG AG concluded that the letter to Major Hulen was an "informal letter of reprimand." Id. The defendant also points out that "most importantly, the plaintiff himself characterized the letter to MAJ Hulen as a letter of reprimand at least twice." Id. (citation omitted). The ABCMR briefly addressed this issue, stating that "[a]lthough the applicant does not agree with the findings of the IG, [see Admin. R. at 6 ¶ 7,] there were substantiated findings that would have required another look by a [Promotion Review Board] process to determine if his name should be resubmitted for confirmation by the Senate." Admin. R. at 15. Moreover, the defendant opines that "[e]ven if the DAIG's conclusions were wrong regarding the nature of the letters the plaintiff issued to his subordinates, which the defendant does not concede, there were still substantiated allegations against the plaintiff that would require review under DODI 1320.4 ¶ 6.2.1.8."[9] Thus, the defendant posits that "the Secretary of the

_____

[9]DODI 1320.4 ¶ 6.2.1.8 states:

When an investigation or inquiry is completed on an officer(s) whose nomination is on hold at the SASC under subparagraph 6.2.1.6., above, the Secretary of the Military Department concerned shall so inform the Secretary of Defense, through the ASD(FMP), in writing. The Secretary of the Military Department's notification shall state if the allegations were substantiated, what action was taken, if any, and whether or not the Secretary of the Military Department still supports the nomination. In those cases where the allegation is substantiated and the Secretary of the Military

(continued...)

[A]rmy would have had to make a determination whether to continue to support the plaintiff's nomination. . . ." Def.'s Reply at 14.

The Court agrees with the defendant and therefore cannot find that the ABCMR's conclusion with respect to the context of the letters was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. Kreis, 866 F.2d at 1514. Moreover, the defendant aptly notes that even if the conclusion about the letters was incorrect, there were other substantiated findings made against the plaintiff that he does not challenge, namely, that he failed to ensure that a subordinate commander was properly relieved from a command position and that he had improperly prepared and processed an annual OER. Def.'s Reply at 14; Def.'s SOF at 13. Thus, the plaintiff's position that the LOCs were improperly used "as the basis for his non-promotion to Brigadier General and his eventual retirement from the FLARNG," even if correct, would not entitle him to the requested relief, as the other substantiated allegations made against him plaintiff would have required review under DODI 1320.4 ¶ 6.2.1.8. Accordingly, summary judgment is awarded to the defendant on Count VII of the complaint and the plaintiff's cross-motion for summary judgment on this count is denied.

---

[9](...continued)
Department and the Secretary of Defense support the nomination, that nomination shall be processed for approval to the President. If the President continues to support the nomination, the ASD(FMP) shall advise the SASC to proceed with the confirmation process. If, based on the adverse information, the Secretary of the Military Department does not support the nomination, the Secretary of the Military Department concerned shall submit a new nomination package to the Secretary of Defense, through the ASD(FMP), requesting that the President withdraw the nomination from the SASC. In those instances where the allegation is unsubstantiated, the ASD(FMP), with the verbal concurrence of the Director, WHMO, and the Executive Secretary of the Department of Defense shall advise the SASC of the outcome of the investigation or inquiry and request that the nomination proceed forward for confirmation. The ASD(FMP) shall provide the Secretary of Defense copies of the memorandum sent to the Director, WHMO and the letter sent to the SASC advising of the action taken. The ASD(FMP) shall also advise the Chairman of the Joint Chiefs of Staff.

Finally, Count IX of the complaint alleges that Colonel Appleby's involuntary retirement was unlawful. Colonel Appleby bases this claim on the assumption that he was never in a non-promotable status and thus "his removal from the Brigadier General Promotion List was unlawful," rendering "his subsequent involuntary retirement [also] unlawful." Compl. at 33 ¶¶ 267-68. Because the Court has already concluded that the ABCMR's decision upholding Colonel Appleby's removal from the promotion list was not arbitrary and capricious, contrary to law, or unsupported by the evidence, the allegation in Count IX is now moot. As the ABCMR found, because Colonel Appleby had reached his maximum years of service for an Active Reserve Colonel, he was transferred to Retired Reserve status. Def.'s Mem. at 19 (citing Admin. R. at 162); see 10 U.S.C. § 14507 (2000) (requiring that Reserve Colonels with 30 years of service be retired unless they are on a list of officers recommended for promotion to the next higher grade). And, at the time of his retirement, Colonel Appleby was not on the Brigadier General promotion list. Commenting on this situation, the ABCMR stated:

> While it [was] unfortunate that the applicant reached his maximum years of service before he could be reconsidered for promotion, the evidence does not suggest that there was any conspiracy or specific effort to deny him an opportunity to be re-considered for promotion. The clock simply ran out on him as it does many officers in similar circumstances.

Admin. R. at 163. The Court cannot take exception to this observation, and accordingly, the defendant is entitled to summary judgment on Count IX of the complaint and summary judgment for the plaintiff on this count is denied.

## IV.    Conclusion

For the foregoing reasons, the defendant's motion to dismiss with respect to Count I, II and III is granted and Count VIII is denied. The defendant's motion for summary judgment with

respect to the remaining counts of the complaint, Counts IV, V, VI, VII, and IX, is granted.  On

the other hand, the plaintiff's cross-motion for summary judgment is denied with respect to

Counts I through VII and IX and granted as to Count VIII.

SO ORDERED on this 29th day of May, 2007.[10]

REGGIE B. WALTON
United States District Judge

_____

[10]  An Amended Order is being issued with this Memorandum Opinion.  The Order issued on March 30, 2007 is hereby vacated.